## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

45COMMITTEE, INC.,
P.O. Box 710993
Herndon, VA 20171,

       *Plaintiff,*

    *v.*

FEDERAL ELECTION COMMISSION,
1050 First Street, NE
Washington, DC 20463,

LISA J. STEVENSON, in her official
capacity as Acting General Counsel of
the Federal Election Commission,
1050 First Street, NE
Washington, DC 20463,

       *Defendants.*

Civil Action No. 1:22-cv-01749

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Plaintiff 45Committee, Inc. (45Committee), by and through its undersigned attorneys, alleges as follows:

### INTRODUCTION

1.    This Administrative Procedure Act (APA) case challenges a policy adopted by the Federal Election Commission (FEC or Commission) and its Acting General Counsel (collectively, Defendants) to deliberately conceal the FEC Commissioners' voting records and statements of reasons in otherwise terminated enforcement proceedings—even though the APA, the Federal Election Campaign Act

(FECA or Act), the Commission's own regulations, and D.C. Circuit precedent expressly require the FEC to release these matter records.

2.     The Commission's concealment policy allows the FEC to adjudicate core First Amendment liberties in secret enforcement proceedings.  The concealment policy's purpose is to convey the false impression to complainants, respondents, and the courts that the FEC has not yet taken action on administrative complaints in its enforcement matters and to manipulate the courts into enforcing FECA against respondents when in fact the agency has already voted on the merits of the administrative complaint and terminated the matter because fewer than four Commissioners voted in favor of taking enforcement action.

3.     45Committee and seven other administrative respondents have been the victims of this unlawful concealment policy thus far.  Campaign Legal Center (CLC) has now filed a civil enforcement action against 45Committee based on the false premise that the FEC never acted on CLC's administrative complaint.  *CLC v. 45Committee, Inc.*, No. 1:22-cv-01115-APM (D.D.C.).

4.     Yet nearly two years ago, the Commissioners did act on the complaint, with the FEC failing to garner four votes to find reason to believe that 45Committee violated FECA as alleged in an administrative complaint filed by CLC.  Under FECA, at least four Commissioners must vote to find reason to believe that a violation of law occurred based on the complaint in order to proceed with enforcement and an investigation of the complaint's allegations.  Because the Commission was split in its vote on the merits of the administrative complaint, and did not garner four votes in

support of enforcement, the matter was terminated.  Pursuant to the APA, FECA, FEC regulations, and D.C. Circuit precedent, the Commission's General Counsel was required to notify the parties of the termination of the proceedings and to publicly release the voting records and any statement of reasons by the Commissioners.

5.     Instead of following the law, the Commissioners who voted in favor of taking enforcement action against 45Committee—Vice Chair Steven T. Walther and Commissioners Shana M. Broussard and Ellen L. Weintraub—departed from longstanding policy and practice by voting *against* administratively closing the file in the matter involving 45Committee.

6.     So even though the matter against 45Committee was terminated because the Commission lacked the votes to proceed to an investigation of the administrative complaint, the Commission has not notified 45Committee of its action on the complaint or publicly disclosed the voting records or any statement of reasons, as required by law.

7.     Commissioners Walther, Broussard, and Weintraub took this action— as they did in seven other recent enforcement matters—for the purpose of concealing from the public and the courts the fact that the Commission has acted on the administrative complaints and to expose the respondents to direct civil lawsuits. FECA allows complainants to sue the Commission in federal court if it "fail[s] … to act" on an administrative complaint and then to sue the respondent directly if the FEC still fails to act.  52 U.S.C. § 30109(a)(8)(A), (C).  By refusing to administratively close the file (which the Commission is using as a pretext to block release of its voting

records and statements of reasons), the Commission has left the public and courts with the false impression that it has not taken action on CLC's administrative complaint against 45Committee, thus deliberately subjecting the Commission and 45Committee to direct civil lawsuits on false pretenses.

8. On top of this concealment, Commissioners Walther, Broussard, and Weintraub have declined to authorize the Commission's Office of General Counsel to defend the FEC in court, which likewise requires a majority vote of Commissioners to authorize. Thus, when a complainant files a lawsuit against the FEC for allegedly failing to act on an administrative complaint—made possible because these three Commissioners object to administratively closing the file and releasing the matter records—they have ensured that the court will enter a default judgment against the Commission as well. And, by continuing to prevent the public release of an enforcement matter's records, Commissioners Walther, Broussard, and Weintraub have ensured that the FEC cannot prove conformity to the court's judgment, thus allowing the complainant to sue the respondent directly in federal court. Indeed, in a similar case, District Judge Kelly recently made clear that he did not "condone the Commission's unseemly failure to appear and defend itself in this Court," or what the respondent there described as the FEC's "scheme to hide its activity and leave regulated parties in legal limbo." Mem. at 7, *CLC v. FEC*, No. 1:21-cv-0406-TJK (D.D.C. June 6, 2022), Dkt. No. 34.

9. That is precisely what happened to 45Committee. As a result of the FEC's concealment policy adopted blocking public release of the matter records,

District Judge Jackson authorized CLC to file a direct lawsuit against 45Committee based on the false premise that the Commission had failed to act on CLC's administrative complaint.  *See CLC v. FEC*, No. 1:20-cv-0809-ABJ (D.D.C.).

10.     But the Commission in fact did act on CLC's administrative complaint. 45Committee obtained heavily redacted voting records through the Freedom of Information Act showing that the Commission took "action[]" on CLC's administrative complaint in June 2020.  *See* Exhibit A, attached.  The FEC failed to initiate an enforcement action, meaning that fewer than four Commissioners voted to find reason to believe that 45Committee had violated the law based on the complaint. The Commissioners who voted *against* finding reason to believe submitted a statement of reasons in support of their decision not to take enforcement action (as required by the D.C. Circuit).  The votes by these Commissioners meant that the matter was terminated because it lacked the requisite support of four Commissioners to proceed to an investigation.  Under the APA, FECA, FEC regulations, and D.C. Circuit precedent, Defendants had ministerial and non-discretionary duties to notify the parties and publicly release the voting records and any statement of reasons.

11.     Defendants' failure to take these ministerial steps is "arbitrary and capricious" and "not in accordance" with law in violation of the APA.  Moreover, the Commission has "unlawfully withheld" and "unreasonably delayed" the release of the matter records under 5 U.S.C. § 706(1).  This Court should "hold unlawful and set aside" the Commission's unlawful concealment policy and issue an order compelling

Defendants to publicly release the Commission's voting records and any statement of reasons.

## JURISDICTION AND VENUE

12.   This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1361.

13.   This Court has the authority to grant declaratory, injunctive, and mandamus relief, set aside unlawful agency action, and compel the FEC to take ministerial and non-discretionary steps unlawfully withheld or unreasonably delayed under the Declaratory Judgment Act, the Mandamus Act, the APA, and this Court's inherent equitable powers.  *See* 28 U.S.C. §§ 1361, 2201, 2202; 5 U.S.C. §§ 555, 702–704, 706.

14.   Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A), (B) and 5 U.S.C. § 703.

## PARTIES

15.   Plaintiff 45Committee is an independent, social-welfare organization tax exempt under section 501(c)(4) of the Internal Revenue Code. 45Committee was established to engage primarily in the policy debate on key national issues.

16.   Defendant FEC is an independent federal agency headquartered in Washington, D.C.

17.   Defendant Lisa J. Stevenson is the Acting General Counsel of the FEC with responsibility for administratively closing the file, notifying the parties of the

Commission's actions in enforcement matters, and releasing the Commissioners' voting records and statements of reasons.

## STATEMENT OF FACTS

### I.   The FEC's Bipartisan Structure & Enforcement Actions

18.   The FEC is an independent federal agency composed of six members appointed by the President by and with the advice and consent of the Senate.   52 U.S.C. § 30106(a).

19.   Perhaps the most important feature of the FEC's design is its bipartisan makeup.   In order to prevent any one political party from changing the regulatory regime or using the FEC's enforcement process for partisan gain, Congress carefully structured the Commission to consist of no more than three members affiliated with the same political party.   *Id.*   Moreover, "[a]ll decisions of the Commission with respect to the exercise of its duties and powers" must be made "by a majority vote of the members of the Commission."   *Id.* § 30106(c).

20.   The FEC annually elects a Chairman and Vice Chairman from among its members to serve for a term of one year.   The Chairman and the Vice Chairman may not be affiliated with the same political party.   *Id.* § 30106(a)(5).

21.   The FEC has "exclusive jurisdiction with respect to the civil enforcement" of FECA.   *Id.* § 30106(b)(1).

22.   Under FECA, "[a]ny person who believes a violation of [the] Act … has occurred, may file a complaint with the Commission."   *Id.* § 30109(a)(1).

23.     So long as the complaint meets certain technical requirements, 11 C.F.R. § 111.4, the Commission assigns the complaint a enforcement matter file number (or MUR number) (shorthand for Matter Under Review), informs "each respondent that the complaint has been filed, advise[s] them of Commission compliance procedures, and enclose[s] a copy of the complaint." *Id.* § 111.5(a)-(b).

24.     The only action for the six-member FEC to take on an administrative complaint under FECA is to vote on whether the Commission has sufficient reason to believe a violation of FECA or FEC regulations has occurred to warrant an enforcement action and investigation of the complaint's allegations. 52 U.S.C. § 30109(a)(2). Before initiating an enforcement action and investigation of the complaint, the Commission must first "determine[], by an affirmative vote of 4 of its members, that it has reason to believe that a person has committed" a violation of the Act. *Id.*; *see id.* § 30106(c) ("[T]he affirmative vote of 4 members of the Commission shall be required in order for the Commission to take any action in accordance with paragraph … (9) of section 30107(a)"); *id.* § 30107(a)(9) (the Commission has the power "to conduct investigations and hearings expeditiously").

25.     When the Commission splits in its vote on whether to find reason to believe a violation of the Act and lacks the four votes necessary to initiate an enforcement action under FECA based on the administrative complaint (typically by a vote of 3-3), the Commission may not proceed to the investigatory phase, and the result is a so-called "deadlock dismissal" of the complaint. *Common Cause v. FEC*, 842 F.2d 436, 448 (D.C. Cir. 1988); *see CREW v. FEC*, 993 F.3d 880, 891 (D.C. Cir.

2021); *DCCC v. FEC*, 831 F.2d 1131, 1133 (D.C. Cir. 1987) (R.B. Ginsburg, J.).   In such cases, the D.C. Circuit has held that "[t]he Commission or the individual Commissioners" who did not find reason to believe that a violation has occurred and therefore did not vote to pursue enforcement must issue a statement of reasons so that any reviewing court may determine "whether reason or caprice determined" the agency's action.  *DCCC*, 831 F.2d at 1135.

26.    In this situation, the FEC must publicly disclose its action.  "If the Commission makes a determination that a person has not violated [the] Act … the Commission shall make public such determination."  52 U.S.C. § 30109(a)(4)(B)(ii).  FEC regulations require that "[i]f the Commission finds no reason to believe, or otherwise terminates its proceedings, the General Counsel shall so advise both complainant and respondent by letter."  11 C.F.R. § 111.9(b).  "If the Commission makes a finding of no reason to believe or no probable cause to believe or otherwise terminates its proceedings, it shall make public such action and the basis therefor no later than thirty (30) days from the date on which the required notifications are sent to complainant and respondent."  *Id.* § 111.20(a).

27.    By longstanding policy and practice, the Commission has traditionally held an administrative vote to close the enforcement file, authorizing the General Counsel to publicly release of its matter files in terminated proceedings.

28.    This public release allows an aggrieved complainant to then challenge the FEC's action in court.  "Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under [FECA], or by a failure of the

Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia."  52 U.S.C. § 30109(a)(8)(A).  In any such case, "the court may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint."  *Id.* § 30109(a)(8)(C).

## II.    The Commission Adopts The Concealment Policy By Departing From Longstanding Policy and Practice of Administratively Closing The File After The Commission Failed to Garner Four Votes to Enforce the Complaint

29.    For decades, the Commission consistently adhered to a policy and practice of administratively closing an enforcement matter file after fewer than four Commissioners voted to find reason to believe a violation had occurred and initiate an enforcement action based on the complaint.  *See, e.g.*, Certification, MUR 5024 (Nov. 4, 2003) (failing to find reason to believe by a vote of 3-3 but deciding by a vote of 6-0 to close the file and send the appropriate letters); Certification, MUR 6396 (Dec. 5, 2013) (same); Certification, MURs 6781, 6786, and 6802 (March 20, 2019) (failing to find reason to believe by a vote of 2-2 but deciding by a vote of 4-0 to close the file and send the appropriate letters); FEC's Partial Mot. to Dismiss at 4, *CREW v. FEC*, No. 1:16-cv-259-BAH (D.D.C. Apr. 19, 2016), Dkt. No. 12 ("The Commission voted on November 17, 2015, and was evenly split three-to-three on whether to find reason to

believe that Crossroads GPS violated the law.  *As a result of that split vote, the Commission closed the file on the matter.*" (emphasis added) (citation omitted)).  After closing the file, the General Counsel would then notify the parties of the Commission's terminating action on the merits of the complaint and release the voting records and any statements of reasons, as required by FECA and the FEC's regulations.

30.     Because an enforcement matter cannot proceed to an investigation without the support of four Commissioners, if fewer than four Commissioners decide to vote to find reason to believe a violation of law occurred based on the administrative complaint, it terminates the matter.  Administratively closing the file after the Commission has failed to initiate enforcement based on the complaint is a purely ministerial and legally insignificant act, and there is no requirement in FECA or FEC regulations requiring this step.

31.     The Commission—at the behest of Commissioners Walther, Broussard, and Weintraub—recently departed from this longstanding policy and practice of closing the file after the Commission has failed to initiate an enforcement action based on the complaint.

32.     Commissioners Walther, Broussard, and Weintraub have refused to vote to administratively close the files in multiple enforcement matters before the Commission, even though the Commission took final votes on the merits of these complaints more than a year ago.  In each of these matters, votes on the merits have been taken as to all parties and statements of reasons have been included in the

administrative file by the commissioners declining to move forward on the complaint. Acting with a lawful quorum, the Commission has considered each of those matters and has taken votes fully resolving their substance.

33.    One of these Commissioners has defended the FEC's failure to release the records of the Commission's action on the administrative complaints by arguing that enforcement matters in which the Commission lacks the requisite four votes to find reason to believe remain perpetually open for future reconsideration.

34.    Commissioners Walther, Broussard, and Weintraub have forced the Commission to follow a new policy and practice of refusing to administratively close an enforcement matter file after the Commissioners failed to find reason to believe a violation occurred and initiate an enforcement action based on the complaint and thus to conceal the Commission's voting records and statements of reasons.

35.    On May 13, 2022, FEC Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor III issued a statement criticizing the Commission's new concealment policy adopted at the behest of Commissioners Walther, Broussard, and Weintraub.  *See Statement of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III Regarding Concluded Enforcement Matters* (May 13, 2022).

36.    Because the Commission does not notify the complainant or respondent of the results of any votes taken in an enforcement matter or publish the relevant materials until the matter file has been closed, Commissioners Walther, Broussard,

and Weintraub have created the false impression that the FEC has taken no action on the administrative complaints.

37.     There is no legal support for the argument that a majority of the Commission must vote to close a file in order to conclude an enforcement matter.  To the contrary, FECA precludes proceeding with enforcement without four affirmative votes finding reason to believe it should do so.  Where fewer than four Commissioners vote to find reason to believe and initiate an enforcement action, the Commission's work is done and a vote to close the file, while welcome and administratively convenient, is legally immaterial.

38.     The D.C. Circuit has long recognized that when the Commission splits and fails to garner four votes to find reason to believe and initiate an enforcement action it results in a "deadlock dismissal."  In such cases, the D.C. Circuit has held that the Commissioners who declined to proceed with enforcement "constitute a controlling group for purposes of the decision," and "their rationale necessarily states the agency's reasons for acting as it did."  *FEC v. NRSC*, 966 F.2d 1471, 1476 (D.C. Cir. 1992).  Thus, it is wrong to conflate the decision not to proceed with enforcement and the attendant issuance of a statement of reasons with the nominal act of file closure.  Instead, a dismissal, as a substantive enforcement decision, exists in an entirely different category from customary, non-statutory administrative acts such as closing the file.

39.     The theoretical possibility that Commissioners might change their votes at some hypothetical future date, after having already adjudicated the merits of a

complaint, does not alter this reasoning.  That is because the Commission *has already passed judgment* on the entirety of the merits in such matters and has explained its reasoning.

40.     Commissioners Walther, Broussard, and Weintraub have not attempted to resolve these matters on the merits in the meantime and have essentially ignored them.  The matters were generally left off of the Commission's executive session agenda under the leadership of a Democratic Chair.  After a Republican became Chair in 2022, each matter has been placed on every subsequent agenda—only to be held over at the request of Commissioner Walther, Broussard, or Weintraub.

41.     Commissioners Walther, Broussard, and Weintraub are weaponizing a nominal housekeeping act, not to allow for future action by the FEC, but to create the public impression that the Commission has not started its work on an administrative complaint, even though the Commission has actually finished it.

42.     The Commission's new concealment policy thwarts the ability of courts to review the legality of the controlling Commissioners' decision not to proceed on a complaint and thus frustrates Congress's explicit statutory grant of federal court jurisdiction to review certain FEC actions.  By preventing the release of information about Commission votes, the FEC is wrongfully subjected to suit for "fail[ing]… to act" on the complaint.  52 U.S.C. § 30109(a)(8)(A).  But one cannot seriously argue that an *affirmative* effort to hold a file open despite the exhaustion of the Commission's statutory role is in fact a *failure* to act as that phrase is used in FECA.

43.    The Commission's new concealment policy also undermines fundamental fairness (not to mention foundational notions of due process) to hold a matter open in the hope that a future slate of commissioners will re-vote and reach a different result.   It prejudices respondents, who are entitled to learn when the Commission has voted not to pursue enforcement in connection with a complaint about their (often constitutionally protected) activity.   And it is unfair to complainants, who are entitled to learn the outcome of their complaint so that they may timely plan and pursue any legal action in response to the FEC's action on the complaint.

### III.    The Administrative Complaint Against 45Committee

44.    On August 23, 2018, CLC filed an administrative complaint with the FEC against 45Committee.  The complaint alleged that 45Committee had violated 52 U.S.C. §§ 30102-30104 by failing to register as a federal political committee and file reports of its contribution and expenditure activity, as required by FECA.  The FEC identified CLC's administrative complaint as MUR 7486.

45.    On June 23, 2020, the Commission took action on CLC's complaint against 45Committee in MUR 7486 while Commissioner Broussard was serving as FEC Chairman.

46.    Indeed, the Commission's amended certification states that "the Commission took the following actions in the above-captioned matter" on June 23, 2020.  Ex. A.

47.     The Commissioners voted on whether to find reason to believe and thus proceed to an investigation of CLC's complaint against 45Committee in MUR 7486.

48.     Fewer than four Commissioners voted to find reason to believe and initiate an enforcement action and proceed to an investigation of the allegations in the complaint in MUR 7486.

49.     A controlling bloc of Commissioners voted against finding reason to believe and initiating an enforcement action and proceeding to an investigation of the allegations in the complaint in MUR 7486, and thus voted to dismiss the administrative complaint.

50.     The Commission lacked the requisite four votes to proceed to an investigation of the allegations in CLC's complaint against 45Committee in MUR 7486.

51.     The Commission terminated the proceedings involving CLC's complaint against 45Committee in MUR 7486.

52.     The Commissioners who voted against finding reason to believe and against proceeding to an investigation of CLC's administrative complaint against 45Committee in MUR 7486 wrote a statement of reasons explaining their votes and included the statement of reasons in the matter file.

53.     Upon information and belief, the Commissioners who voted against finding reason to believe and against proceeding to an investigation of CLC's complaint against 45Committee in MUR 7486 stated that they did so for reasons of prosecutorial discretion under *Heckler v. Chaney*, 470 U.S. 821 (1985).

54.    The Commission voted on whether to administratively close the file involving CLC's complaint against 45Committee in MUR 7486.

55.    Fewer than four Commissioners voted to administratively close the file involving CLC's complaint against 45Committee in MUR 7486.

56.    Upon information and belief, the Commissioners who voted against finding reason to believe and against proceeding to an investigation of CLC's complaint against 45Committee in MUR 7486 voted to administratively close the file in MUR 7486.

57.    Upon information and belief, Commissioners Walther, Broussard, and Weintraub voted against administratively closing the file in MUR 7486.

58.    On December 2, 2021, the Commission held a second vote regarding CLC's complaint against 45Committee in MUR 7486 while Commissioner Dickerson was serving as FEC Chairman.  *See* Exhibit B, attached.

59.    Again, fewer than four Commissioners voted to administratively close the file involving CLC's complaint against 45Committee in MUR 7486.

60.    Upon information and belief, the Commissioners who voted against finding reason to believe and against proceeding to an investigation of CLC's complaint against 45Committee in MUR 7486 again voted to administratively close the file in MUR 7486.

61.    Upon information and belief, Commissioners Walther, Broussard, and Weintraub voted against administratively closing the file in MUR 7486.

62.     Accordingly, the Commission has terminated CLC's complaint against 45Committee in MUR 7486, but Defendants have not publicly announced the FEC's decision, notified 45Committee of its action, or released the voting records or any statement of reasons.

## IV.   Subsequent Judicial Proceedings

63.     On March 24, 2020, CLC filed a civil lawsuit against the FEC in the U.S. District Court for the District of Columbia pursuant to 52 U.S.C. § 30109(a)(8)(A). *See CLC v. FEC*, No. 20-cv-0809-ABJ (D.D.C.).

64.     CLC alleged that the Commission had failed to act on CLC's administrative complaint in MUR 7486, and that the FEC's inaction was contrary to law under § 30109(a)(8).

65.     The FEC did not enter an appearance or otherwise defend the action.

66.     Commissioners Walther and Weintraub voted against authorizing the Commission's attorneys to appear and defend the action. Ex. A.

67.     CLC filed an affidavit for default on May 27, 2020; the clerk entered default on May 28, 2020; CLC then filed a motion for default judgment on June 1, 2020; this motion was denied without prejudice on March 11, 2021, and the FEC was given until May 1, 2021 to enter an appearance.

68.     The FEC did not enter an appearance by May 1, 2021, and CLC filed another motion for default judgment on May 5, 2021.

69.     On November 8, 2021, Judge Jackson issued an order granting CLC's motion. The court found that "Defendant's failure to act on plaintiff's administrative

18

complaint is contrary to law" and ordered the FEC to "act on the complaint within thirty days pursuant to 52 U.S.C. § 30109(a)(8)(C)." Order, *CLC v. FEC*, No. 1:20-cv-0809-ABJ (D.D.C. Nov. 8, 2021), Dkt. No. 25.

70.    On December 9, 2021, CLC filed a motion for a declaration that the FEC has failed to conform to the default judgment order.

71.    On January 24, 2022, 45Committee filed an amicus brief arguing that CLC's motion was moot in light of the FEC's disclosure of redacted documents.

72.    On April 21, 2022, Judge Jackson granted CLC's motion.  The court declared that the FEC "has not complied with the Court's November 8, 2021 Order within the time specified," and that CLC may "may bring an action to enforce the FECA" against 45Committee pursuant to 52 U.S.C. § 30109(a)(8)(C).  Order, *CLC v. FEC*, No. 1:20-cv-0809-ABJ (D.D.C. Apr. 21, 2022), Dkt. No. 32.

73.    On April 22, 2022, CLC filed a lawsuit for injunctive and declaratory relief against 45Committee in No. 1:22-cv-01115-APM (D.D.C.).

74.    On April 28, 2022, 45Committee filed a motion to intervene for the purpose of appeal; on May 13, 2022, Judge Jackson denied 45Committee's this motion.

75.    On June 6, 45Committee filed a notice of appeal of Judge Jackson's rulings to the D.C. Circuit.  *See CLC v. FEC*, Nos. 22-5164, 22-5165 (D.C. Cir. June 9, 2022).

## STANDING

76.     45Committee has standing to challenge Defendants' concealment policy, including their failures to send the requisite notifications of the Commission's terminating action in MUR 7486 to 45Committee and release the voting records and any statement of reasons.

77.     Defendants' concealment policy has injured 45Committee because that policy wrongfully exposed 45Committee to a direct civil lawsuit pursuant to 52 U.S.C. § 30109(a)(8)(C).   Had Defendants sent the required notifications and publicly released the voting records and any statement of reasons in MUR 7486, the public record at the time of Judge Jackson's April 21, 2022 order would have shown that the Commission did not "fail[] to act" on CLC's administrative complaint against 45Committee in MUR 7486.  52 U.S.C. § 30109(a)(8)(C).  Moreover, the public record would have disproven any allegation that the Commission had not "conform[ed]" to Judge Jackson's November 8, 2021 order—a necessary precondition for CLC to file a direct civil suit against 45Committee.  *Id.*

78.     45Committee is also suffering informational injury as a result of Defendants' concealment policy.  45Committee is deprived of information that it is entitled to receive under the APA, FECA, FEC regulations, and D.C. Circuit precedent.  The denial of this information causes 45Committee to suffer the type of harm the disclosure provisions are meant to prevent, because 45Committee is denied information regarding its continued exposure to enforcement actions and civil liability and information highly relevant to defending ongoing legal action.

79.     45Committee's injuries are redressable by the Court because a favorable ruling vacating the concealment policy and ordering the Commission to notify 45Committee of the Commission's terminating action in MUR 7486 and release its voting records and any statement of reasons would provide 45Committee with the information that it seeks.  Information demonstrating that the Commission acted on CLC's administrative complaint against 45Committee on June 23, 2020, will allow 45Committee to obtain dismissal of CLC's direct civil suit because the voting records and statement of reasons will show that the Commission did not "fail[] to act" on CLC's complaint and that there was no lack of "conform[ity]" with Judge Jackson's November 8, 2021 order.  *Id.*

## FINAL AGENCY ACTION

80.     The FEC is an "agency" under the APA.  5 U.S.C. § 551(1).

81.     Defendants' concealment policy is a final, reviewable "agency action for which there is no other adequate remedy in a court."  *Id.* §§ 551(13), 704.  This policy represents the consummation of the Defendants' decision-making process to conceal the FEC's voting records and statements of reasons when four Commissioners do not vote in favor of initiating an enforcement action by refusing to administratively close the file.

82.     Defendants' concealment policy affects 45Committee's legal rights and obligations because the Defendants applied the concealment policy in MUR 7486, which has resulted in 45Committee's wrongful exposure to a direct civil lawsuit pursuant to 52 U.S.C. § 30109(a)(8)(C) and 45Committee being denied access to the

voting records and any statement of reasons in MUR 7486 that it is entitled to receive under the APA, FECA, FEC regulations, and D.C. Circuit precedent.

## CLAIMS FOR RELIEF

### Count I—Violation of Administrative Procedure Act
### Agency Action Contrary To Law

83.     45Committee incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

84.     A court must "hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

85.     Defendants' concealment policy is contrary to law.

86.     The APA requires that "[p]rompt notice shall be given of the denial … of a written application, petition, or other request of an interested person made in connection with any agency proceeding," and "the notice shall be accompanied by a brief statement of the grounds for denial." *Id.* § 555(e).

87.     In addition, both FECA and FEC regulations require Defendants to notify a respondent in an enforcement matter that proceedings have terminated and then to publicly release the Commission's voting records. 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 111.9(b), 111.20(a).

88.     Further, D.C. Circuit precedent requires Defendants to issue a statement of reasons when the Commission splits on its reason-to-believe vote and fails to garner four votes to initiate an enforcement action based on the complaint so

22

that any reviewing court may determine the basis for the Commission's action. *DCCC*, 831 F.2d at 1135.

89.     Defendants have adopted and adhered to a new concealment policy whereby the Commission does not administratively close enforcement matters in which fewer than four Commissioners voted against finding reason to believe a violation occurred for the purpose of concealing the Commission's terminating action, its voting records, and statements of reasons.

90.     Defendants adhered to this new concealment policy in its action on CLC's administrative complaint against 45Committee in MUR 7486.

91.     This concealment policy is "not in accordance with" the APA, FECA, FEC regulations, and D.C. Circuit precedent.  5 U.S.C. § 706(2)(A).

92.     This Court should hold unlawful and set aside Defendants' concealment policy and issue an order compelling Defendants to comply with the APA, FECA, FEC regulations, and D.C. Circuit precedent by notifying 45Committee of the Commission's terminating action in MUR 7486 and releasing the Commission's voting records and any statement of reasons.

### Count II—Violation of Administrative Procedure Act Arbitrary and Capricious Agency Action

93.     45Committee incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

94.     A court must "hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

95.     An agency acts arbitrarily and capriciously in violation of the APA when it fails to comply with its own regulations.

96.     The FEC's own regulations require Defendants to notify a respondent in an enforcement matter when proceedings have terminated and then to publicly release the Commission's voting records.  11 C.F.R. §§ 111.9(b), 111.20(a).

97.     Defendants acted arbitrarily and capriciously by failing to comply with the FEC's regulations because they have not notified 45Committee of the Commission's terminating action on CLC's administrative complaint in MUR 7486, nor has the Commission publicly released its voting records, even though MUR 7486 has been terminated.

98.     This Court should issue an order compelling the Defendants to comply with the FEC's own regulations by notifying 45Committee of the Commission's terminating action in MUR 7486 and releasing the Commission's voting records.

### Count III—Violation of Administrative Procedure Act Arbitrary and Capricious Agency Action

99.     45Committee incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

100.    A court must "hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

101.    Defendants had a longstanding policy and practice of administratively closing the file in an enforcement matter upon a split vote failing to find reason to believe a violation occurred and initiate an enforcement action based on the complaint, causing the General Counsel to notify the parties of the Commission's terminating action and publicly release the voting records and any statement of reasons.

102.    Defendants acted arbitrarily and capriciously in MUR 7486 because Defendants have, without acknowledgment or explanation, departed from its longstanding policy and practice by adopting a new concealment policy of refusing to administratively close the file in an enforcement matter upon split votes failing to find reason to believe a violation occurred and initiate an enforcement action based on the complaint for the purpose of concealing the Commission's terminating action, its voting records, and any statement of reasons.

103.    Defendants acted arbitrarily and capriciously by treating MUR 7486 differently than similarly situated enforcement matters in which Defendants administratively closed the file upon split votes failing to find reason to believe a violation occurred and initiate an enforcement action based on the complaint, because Defendants adhered to its new concealment policy in MUR 7486, but Defendants did not adhere to that policy in similarly situated enforcement matters.

104. This Court should hold unlawful and set aside Defendants' concealment policy and issue an order compelling Defendants to comply with its longstanding policy and precedent.

### Count IV—Violation of Administrative Procedure Act
### Agency Action Unlawfully Withheld or Unreasonably Delayed

105. 45Committee incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

106. A court "shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

107. Defendants have "unlawfully withheld or unreasonably delayed" notice of the Commission's terminating action in MUR 7486 and release of its voting records and any statement of reasons. *Id.*

108. Under the APA, the FEC has a ministerial and non-discretionary duty to "to conclude a matter presented to it." *Id.* § 555(b). In addition, the FEC has a ministerial and non-discretionary duty to give "[p]rompt notice … of the denial … of a written application, petition, or other request of an interested person made in connection with any agency proceeding," and "the notice shall be accompanied by a brief statement of the grounds for denial." *Id.* § 555(e).

109. Under FECA and the FEC's regulations, the FEC has a ministerial and non-discretionary duty to notify the respondent and publicly release the voting records within 30 days of such notice when the FEC terminates an enforcement proceeding. 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 111.9(b), 111.20(a).

110.    Under D.C. Circuit precedent, when fewer than four Commissioners vote to find reason to believe and initiate an enforcement action based on the complaint, the FEC has a ministerial and non-discretionary duty to release the statements of reasons of the Commissioners voting against enforcement so that any reviewing court may determine the basis for the Commission's action. *DCCC*, 831 F.2d at 1135.

111.    Although the FEC terminated the agency proceeding in MUR 7486 over a year ago, Defendants have not taken these ministerial steps that they are required to take because they have not notified 45Committee of the Commission's terminating action or released its voting records and any statement of reasons.

112.    Defendants' failure to comply with its obligations constitutes agency action "unlawfully withheld" and "unreasonably delayed."

113.    This Court should issue an order compelling Defendants to comply with the APA, FECA, FEC regulations, and D.C. Circuit precedent by notifying 45Committee of the Commission's terminating action in MUR 7486 and releasing its voting records and any statement of reasons.

## Count V—Mandamus
## The Defendants Are Subject to Mandamus

114.    45Committee incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

115.   The Court has authority over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

116.   Defendants are clearly obligated to comply with federal law, including the APA, FECA, FEC regulations, and D.C. Circuit precedent.

117.   As set forth above, Defendants are clearly not in compliance with the law because, although the Commission terminated proceedings against 45Committee more than one year ago, Defendants have not notified 45Committee of the Commission's terminating action or publicly released the matter records.

118.   Mandamus is appropriate to the extent that 45Committee has no adequate alternative remedy against Defendants.

119.   This Court should issue an order compelling Defendants to comply with the law by notifying 45Committee of the Commission's terminating action in MUR 7486 and releasing its voting records and any statement of reasons.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

a.   A declaration, order, and judgment holding that Defendants violated the APA, FECA, FEC regulations, and D.C. Circuit precedent by failing to notify 45Committee of the Commission's terminating action in MUR 7486 and by failing to publicly release the Commission's voting records and any statement of reasons;

b.   An order setting aside Defendants' new concealment policy of refusing to administratively close an enforcement matter file after the Commission fails to

garner four votes to initiate an enforcement action based on the complaint for the purpose of concealing the Commission's voting records and statements of reasons;

c.      An order compelling Defendants to issue the required notification to 45Committee of the Commission's terminating action in MUR 7486 and publicly release the voting records and any statement of reasons;

d.      An injunction requiring Defendants to issue the required notifications to complainants and respondents and to publicly release Commission's voting records and statements of reasons in any enforcement matter after the Commission fails to garner four votes to initiate an enforcement action based on the complaint;

e.      An award of all costs and attorneys' fees pursuant to any applicable statute or authority; and

f.      Any other relief this Court deems just and proper.

Dated: June 17, 2022                    Respectfully submitted,


                                        *s/ Brett A. Shumate*
                                        ─────────────────────────
                                        Brett A. Shumate
                                            (D.C. Bar No. 974673)
                                        E. Stewart Crosland
                                            (D.C. Bar No. 1005353)
                                        Brinton Lucas
                                            (D.C. Bar No. 1015185)
                                        Stephen J. Kenny
                                            (D.C. Bar No. 1027711)
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C. 20001
                                        Telephone:  (202) 879-3939
                                        Facsimile:  (202) 626-1700

                                        *Counsel for Plaintiff*