# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| 45COMMITTEE, INC., <br> P.O. Box 710993 <br> Herndon, VA 20171 <br><br> *Plaintiff,* <br><br> v. <br><br> FEDERAL ELECTION COMMISSION, <br> 1050 First Street, NE <br> Washington, DC 20463 <br><br> and <br><br> LISA J. STEVENSON, in her official <br> capacity as Acting General Counsel of the <br> Federal Election Commission, <br> 1050 First Street, NE <br> Washington, DC 20463, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. No. 22-1749 (APM) <br><br><br><br><br><br><br><br><br><br> **MOTION TO DISMISS** |

## FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, the Federal

Election Commission ("FEC") hereby moves for an order dismissing all counts in plaintiff's

complaint, including those that seek relief pursuant to the Administrative Procedure Act, 5

U.S.C. §§ 702-706, and mandamus, 28 U.S.C. § 1361, for lack of jurisdiction and for failure to

state a claim upon which relief can be granted.  Plaintiff's claims are precluded in their entirety

because the judicial review provision of the Federal Election Campaign Act ("FECA"), 52

U.S.C. § 30109(a)(8), is the exclusive means of challenging the FEC's handling of

administrative enforcement matters.  Plaintiff also fails to state a claim upon which relief can be

granted because it has not challenged a final, discrete agency action, and because the actions it does challenge are committed to agency discretion.  Finally, plaintiff has so failed to show harm to a legally cognizable interest, or that its claims are redressable by a favorable decision from the Court, that it lacks standing to pursue its claims.  A supporting memorandum and a proposed order accompany this motion.[1]

Respectfully submitted,

Lisa Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

*/s/ Christopher H. Bell*
Christopher H. Bell (D.C. Bar No. 1643526)
Attorney
chbell@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

August 22, 2022

---

[1]     LCvR 7(n)(1), which generally requires an agency defending an administrative action to file a certified list of the contents of the administrative record contemporaneously with the filing of a dispositive motion, is not applicable here.  For the reasons detailed in the FEC's Memorandum of Points and Authorities in support of this Motion to Dismiss, plaintiff fails to challenge any reviewable final agency action, and its claims are precluded by FECA's exclusive judicial review mechanism.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| 45COMMITTEE, INC., ) | |
| ) | |
| Plaintiff, ) | Civ. No. 22-1749 (APM) |
| ) | |
| v. ) | |
| ) | |
| FEDERAL ELECTION COMMISSION, ) | |
| ) | |
| and ) | |
| ) | |
| LISA J. STEVENSON, in her official ) | MEMORANDUM IN SUPPORT OF |
| Capacity as Acting General Counsel, ) | MOTION TO DISMISS |
| ) | |
| Defendants. ) | |

**FEDERAL ELECTION COMMISSION'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

Lisa Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Christopher H. Bell (D.C. Bar No. 1643526)
Attorney
chbell@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

August 22, 2022

# TABLE OF CONTENTS

**PAGE**

BACKGROUND ................................................................................................2

I.    THE FEC AND ITS ADMINISTRATIVE ENFORCEMENT
      PROCEDURES.........................................................................................2

II.   FACTUAL BACKGROUND ....................................................................5

      A.    Administrative Proceedings Related to this Action ............................5

      B.    This Action.........................................................................................7

ARGUMENT ................................................................................................10

I.    STANDARD OF REVIEW ....................................................................10

II.   PLAINTIFF'S CLAIMS ARE PRECLUDED BECAUSE FECA'S
      JUDICIAL REVIEW PROVISION IS THE EXCLUSIVE
      PROCEDURE FOR CHALLENGING THE FEC'S HANDLING
      OF ENFORCEMENT PROCEEDINGS ..................................................11

III.  PLAINTIFF ALSO FAILS TO STATE A CLAIM BECAUSE IT
      HAS NOT IDENTIFIED A FINAL, DISCRETE AGENCY ACTION,
      AND THE ACTIONS IT DOES CHALLENGE ARE COMMITTED
      TO AGENCY DISCRETION BY LAW ..................................................19

      A.    The FEC's Determination as to When to Terminate
            Enforcement Proceedings Is Not Reviewable Because It Is
            Committed to the Agency's Discretion by Law ...............................19

      B.    Plaintiff's Broad "Concealment Policy" Allegations Do Not
            Challenge Final Agency Action and Therefore Fail to State Claim
            Upon Which Relief Can Be Granted ................................................24

IV.   PLAINTIFF'S MANDAMUS CLAIM SHOULD BE DISMISSED
      BECAUSE PLAINTIFF CANNOT ESTABLISH A CLEAR AND
      INDISPUTABLE RIGHT TO THAT DRASTIC RELIEF .........................31

V.    PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS ................33

      A.    Plaintiff Lacks Standing to Pursue its Broad
            "Concealment Policy" Allegations on Behalf of Unnamed
            Third Parties....................................................................................33

B.      Plaintiff Lacks Standing Even to Pursue Its Claims
        Regarding MUR 7486 ...................................................................................37

CONCLUSION ...............................................................................................................39

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Akinseye v. District of Columbia*, 339 F.3d 970 (D.C. Cir. 2003) ................................ 11

*Allen v. Wright*, 468 U.S. 737 (1984) ................................................................. 34, 36

*Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748 (D.C. Cir. 2019) .................... 11-12

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183 (D.C. Cir. 2016) ................................. 31, 32

*Am. Legal Found. v. FCC*, 808 F.2d 84 (D.C. Cir. 1987) ........................................... 35

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................... 11, 24, 30, 32

*Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027 (D.C. Cir. 2007) .................... 18, 22

*Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41 (D.D.C. 2014) ............................ 25-26, 29

*Barr v. Clinton*, 370 F.3d 1196 (D.C. Cir. 2004) .......................................... 10-11

*Beam v. Gonzales*, 548 F. Supp. 2d 596 (N.D. Ill. 2008) ............................. 17, 19, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................... 11, 24, 30, 32

*Bennett v. Spear*, 520 U.S. 154 (1997) .............................................. 25, 27, 34, 36

*Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984) ............................. 13, 14, 16, 17

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ........................................................ 12

*Bowles v. Russell*, 551 U.S. 205 (2007) ................................................................ 12

*Buckley v. Valeo*, 424 U.S. 1 (1976) ..................................................................... 2

*Campaign Legal Ctr. v. FEC*, 31 F.4th 781 (D.C. Cir. 2022) ................................. 39

*Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*,
   846 F.3d 1235 (D.C. Cir. 2017) ...................................................................... 12

*Citizens for Resp. & Ethics in Wash. v. FEC*,
   164 F. Supp. 3d 113 (D.D.C. 2015) ..................................................... 15, 16, 25

*Citizens for Resp. & Ethics in Wash. v. FEC*,
  363 F. Supp. 3d 33 (D.D.C. 2018)..................................................................... 16, 19

*Citizens for Resp. & Ethics in Wash. v. FEC*,
  892 F.3d 434 (D.C. Cir. 2018).................................................................. 20, 21, 23

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*,
  387 F. Supp. 3d 33 (D.D.C. 2019)............................................................ 26, 27, 29

*Citizens for Resp. & Ethics in Wash. v. FEC*,
  243 F. Supp. 3d 91 (D.D.C. 2017).............................................................15-16, 19

*City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979).......................................... 12

*Coal River Energy, LLC v. Jewell*, 751 F.3d 659 (D.C. Cir. 2014).............................. 14

*Cobell v. Kempthorne*, 455 F.3d 301 (D.C. Cir. 2006)............................... 25, 26, 30, 33

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) ........................................ 25, 30, 33

*Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997) ............................................. 38

*Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798 (D.C. Cir. 2006)................................... 25

*Ctr. for Biological Diversity v. Brennan*, 571 F.Supp.2d 1105 (N.D. Cal. 2007) ...... 32

*Del Monte Fresh Produce N.A., Inc. v. United States*,
  706 F. Supp. 2d 116 (D.D.C. 2010)........................................................... 26, 31, 33

*Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019).................................................. 21

*Diamond v. Charles*, 476 U.S. 54 (1986) ................................................................. 35

*FEC v. Akins*, 524 U.S. 11 (1998).............................................................................. 39

*FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480 (1985) .................. 5

*FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471 (D.C. Cir. 1992) ........... 28

*Fieger v. Gonzales*, Civ. No. 07-10533,
  2007 WL 2351006 (E.D. Mich. Aug. 15, 2007)............................. 17, 19, 22, 24, 38

*Free Speech for People v. FEC*, 442 F. Supp. 3d 335 (D.D.C. 2020)................... 38, 39

*Friends of Animals v. Jewell*, 828 F.3d 989 (D.C. Cir. 2016) ................................... 38

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000) .................................... 34

*FTC v. Standard Oil Co.*, 449 U.S. 232 (1980) .......................................................................... 16

*Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009) ........................................................................ 14

*Heckler v. Chaney*, 470 U.S. 821 (1985) ......................................................................... 18, 20, 22

*In re Medicare Reimbursement Litig.*, 414 F.3d 7 (D.C. Cir. 2005) ............................................ 31

*Inst. for Wildlife Prot. v. Norton*, 337 F. Supp. 2d 1223 (W.D. Wash. 2004) ............................ 26

*Int'l Bhd. of Teamsters v. TSA*, 429 F.3d. 1130 (D.C. Cir. 2005) ................................................ 34

*Jarkesy v. S.E.C.*, 803 F.3d 9 (D.C. Cir. 2015) ............................................................................ 12

*Jones v. Ashcroft*, 321 F. Supp. 2d 1 (D.D.C. 2004) .................................................................... 10

*Judicial Watch, Inc. v. FEC,*
293 F. Supp. 2d 41 (D.D.C. 2003) ..........................................................................................36-37

*Khadr v. United States*, 529 F.3d 1112 (D.C. Cir. 2008) ............................................................. 10

*Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013) ................................................................ 13

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) .................................................................................... 35

*Lillemoe v. USDA, Foreign Agriculture Service,*
Civ. No. 15-02047, 2020 WL 1984256 (D.D.C. Apr. 27, 2020) ......................................... 27, 29

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................................... 34

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ..................................................................... 25

*Nader v. FEC*, 725 F.3d 226 (D.C. Cir. 2013) ....................................................................... 38, 39

*Nat'l Veterans Affs. Council v. Fed. Serv. Impasses Panel,*
Civ. No. 20-00837, 2021 WL 5936407 (D.D.C. Feb. 10, 2021) ............................................. 12

*Norton v. S. Utah Wilderness*, 542 U.S. 55 (2004) .......................................................18, 25-26, 31

*Nyambal v. Mnuchin*, 245 F. Supp. 3d 217 (D.D.C. 2017) .......................................................... 32

*Orlov v. Howard*, 523 F. Supp. 2d 30 (D.D.C. 2007) .................................................................. 18

*Oryszak v. Sullivan*, 576 F.3d 522 (D.C. Cir. 2009) .................................................................... 18

*Peek v. Mitchell*, 419 F.2d 575 (6th Cir. 1970)...........................................................................22

*Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996)........................................................................15, 17

*Power v. Barnhart*, 292 F.3d 781 (D.C. Cir. 2002) ............................................................31, 32

*Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012) ............................................11

*Rumber v. District of Columbia*, 595 F.3d 1298 (D.C. Cir. 2010) .............................................34

*Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151 (D.C. Cir. 2006).....................................20

*Settles v. U.S. Parole Comm'n*, 429 F.3d 1098 (D.C. Cir. 2005) ...............................................11

*Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011)................................................13, 18, 21

*Singleton v. Wulff*, 428 U.S. 106 (1976) ...................................................................................35

*Stockman v. FEC*, 138 F.3d 144 (5th Cir. 1998)..........................15, 16-17, 19, 23, 38

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..................................................................34

*Thunder Basin Coal Company v. Reich*, 510 U.S. 200 ................................................................12

*United States v. Monzel*, 641 F.3d 528 (D.C. Cir. 2011)..............................................31, 32, 33

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................................34

## Statutes and Regulations

5 U.S.C. § 555...........................................................................................................................8, 9

5 U.S.C. § 701 ......................................................................................................19, 20, 21, 24

5 U.S.C. § 702 ...............................................................................................................................18

5 U.S.C. § 704 ..............................................................................................12, 14, 24, 27

5 U.S.C. § 706 ......................................................................................................................8, 9, 18

28 U.S.C § 1331 ...........................................................................................................................12

28 U.S.C. § 1361 ....................................................................................................................9, 31

52 U.S.C. §§ 30101-46 ........................................................................................... 2

52 U.S.C. § 30106 ....................................................................... 2, 5, 15, 22, 28

52 U.S.C. § 30107 .............................................................................. 2, 5, 22, 28

52 U.S.C. § 30109 ............................................................................................ 2, 24

52 U.S.C. § 30109(a)(1) ............................................................................................ 2

52 U.S.C. § 30109(a)(2) ........................................................................................ 2, 4

52 U.S.C. § 30109(a)(3) ............................................................................................ 4

52 U.S.C. § 30109(a)(4) ......................................................................... 4, 8, 9, 23, 28

52 U.S.C. § 30109(a)(6) ........................................................................................ 2, 4

52 U.S.C. § 30109(a)(8) .......................................... 1, 5, 6, 8, 10, 13-16, 17, 19

52 U.S.C. § 30109(a)(12) .......................................................................................... 2

52 U.S.C. § 30111(a)(8) ............................................................................................ 2

11 C.F.R. § 2.4 ............................................................................................................ 4

11 C.F.R. § 111.9 .................................................................................. 8, 9, 19, 20

11 C.F.R. § 111.16 .................................................................................................... 4

11 C.F.R. § 111.20 ............................................................................... 2, 8, 9, 19, 20

11 C.F.R. § 111.21 .................................................................................................... 2

**Miscellaneous**

FEC, Disclosure of Certain Documents in Enforcement and Other Matters,
    81 Fed. Reg. 50,702 (Aug. 2, 2016) ........................................................ 5

FEC, Statement of Policy Regarding Commission Action in Matters at the
    Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545 (Mar. 16, 2007) .................. 3, 4

Fed. R. Civ. P. 5(b)(2)(E) ...................................................................................... 41

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 10, 13

Fed. R. Civ. P. 12(b)(6).................................................................................... 11, 13, 18

*Symposium on Campaign Finance Enforcement: A Comparative View*,
   11 J. L. & Pol. 1 (1995) ................................................................................ 23

Plaintiff 45Committee, Inc. ("45Committee") seeks certain records from a pending administrative enforcement matter of the Federal Election Commission ("Commission" or "FEC") in which plaintiff is involved, challenging what it claims is an FEC "policy" to conceal such records in violation of the Administrative Procedure Act ("APA") and the mandamus statute.  In addition, plaintiff seeks to enjoin the FEC's alleged "policy," which it claims has been applied in a vaguely defined group of seven other enforcement matters, and it seeks a sweeping and unprecedented injunction that would alter agency proceedings as they have functioned for decades.  Plaintiff's claims cannot succeed, and they should be dismissed.

Plaintiff's claims here are precluded because the judicial review provision of the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30109(a)(8), is the exclusive means of challenging the FEC's handling of administrative enforcement matters.  Courts have repeatedly dismissed comparable APA claims because only FECA review is available.

Plaintiff also fails to state a plausible claim for relief.  The agency conduct plaintiff challenges, namely decisions as to when to terminate enforcement proceedings, is committed to agency discretion and is therefore not reviewable under the APA.  Plaintiff's allegations about how such matters end are belied by the text of FECA, the agency's longstanding practices, and the deference courts give agencies in the conduct of their law enforcement proceedings.  In addition, plaintiff's claims as to the alleged "concealment policy" fail because plaintiff does not challenge a final, discrete agency action, as required for APA review, and instead offers the type of generalized complaint about agency behavior that courts routinely dismiss.  By failing to point to more than a small handful of a vaguely defined FEC enforcement matters, plaintiff falls far short of reaching the required threshold that it challenge a specific agency action.

Indeed, plaintiff falls so short in its effort to show that it has a right to the information it seeks prior to closure of the administrative file — even in the enforcement proceeding in which it is involved, let alone those involving only third parties — that plaintiff lacks standing to pursue its claims.

For the foregoing reasons, plaintiff's complaint should be dismissed in its entirety.

## BACKGROUND

### I.     THE FEC AND ITS ADMINISTRATIVE ENFORCEMENT PROCEDURES

The FEC is an independent agency of the United States government with jurisdiction over the administration, interpretation, and civil enforcement of FECA, 52 U.S.C. §§ 30101-46. *See generally* 52 U.S.C. §§ 30106(b)(1), 30107(a), 30109.  Congress provided for the Commission to "prepare written rules for the conduct of its activities," 52 U.S.C. § 30106(e), "formulate policy" under FECA, *see, e.g.*, 52 U.S.C. § 30106(b)(1), and make rules and issue advisory opinions, 52 U.S.C. §§ 30107(a)(7), (8); *id.* §§ 30108; 30111(a)(8); *see also Buckley v. Valeo*, 424 U.S. 1, 110-11 (1976) (per curiam).  The Commission is also authorized to institute investigations of possible violations of FECA, 52 U.S.C. § 30109(a)(1)-(2), and to initiate civil enforcement actions in the United States district courts, *id.* §§ 30106(b)(1), 30107(a)(6), 30107(e), 30109(a)(6).

FECA permits any person to file an administrative complaint with the Commission alleging a violation of the statute.  52 U.S.C. § 30109(a)(1).  Absent waiver, proceedings on such complaints are covered by confidentiality protections, 52 U.S.C. § 30109(a)(12), 11 C.F.R. § 111.21, until the Commission "terminates its proceedings," 11 C.F.R. § 111.20.  Upon receipt of an administrative complaint, the Commission's Office of General Counsel ("OGC") is required to notify anyone alleged to have committed such a violation, referred to as a respondent, and to provide such persons with an opportunity to demonstrate in writing that no action should be

2

taken in the Matter Under Review ("MUR").  *Id*.  OGC then prepares a report to the Commission

known as a General Counsel's Report.  The Report analyzes the allegations in the complaint,

applies the relevant law to the facts alleged, and sets forth OGC's recommendations for

Commission action.  The first General Counsel's Report in an enforcement MUR usually

includes a recommendation that the Commission take actions regarding the alleged violations,

including most commonly: (1) find reason to believe that a violation occurred and open an

investigation; (2) find no reason to believe a violation occurred; (3) dismiss the matter as an

exercise of prosecutorial discretion; or (4) dismiss the matter with a cautionary message to the

respondent regarding its legal obligations.  And FEC votes at this stage are frequently on whether

to take one or more of these courses of action.  *See* FEC, Statement of Policy Regarding

Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg.

12,545 (Mar. 16, 2007).  On the other hand, other types of votes sometimes take place in advance

of votes on whether there is a reason to believe a violation occurred or to dismiss.  Other closed

matters provide examples of such votes.  *See, e.g.,* FEC MUR 6798 (David Vitter for U.S.

Senate).[1]

Generally, if one or more Commissioners objects to a first General Counsel's Report after

it has been circulated to the Commission, or if fewer than four Commissioners vote to approve or

reject the report's recommendations by the voting deadline, the Commission considers the

enforcement matter at an Executive Session.  *See generally* FEC, Commission Directive No. 52

(Circulation Vote Procedure) (effective Dec. 1, 2016).  Executive Sessions are meetings that are

---

[1]        Certification, FEC MUR 6798 (David Vitter for U.S. Senate, *et al*.) (Dec. 5, 2017) (4-1
vote to send letter to respondents), https://www.fec.gov/files/legal/murs/6798/19044463470.pdf;
Certification, FEC MUR 6798 (March 26, 2019) (2-2 vote to find reason to believe and 4-0 vote
to close the file), https://www.fec.gov/files/legal/murs/6798/19044463493.pdf.

closed to the public during which Commissioners consider pending enforcement matters and

other items that must be kept confidential.  *See* 11 C.F.R. § 2.4.  During such meetings, the

Commissioners may, *inter alia*, discuss OGC's recommendations and vote on potential actions

like those described above, including whether there is "reason to believe" that a FECA violation

has occurred, 52 U.S.C. § 30109(a)(2), or whether to take some other action, as described above.

If at least four members of the Commission vote to find "reason to believe" a FECA

violation has occurred, the Commission must notify the respondent of the alleged violation and

its factual basis, and the agency then ordinarily investigates the allegations.  *Id.*  On the other

hand, if at least four Commissioners determine that there is "no reason to believe" a violation

occurred or that it is otherwise not appropriate to proceed with an investigation, they may vote to

dismiss and to close the file in the matter.  FEC, Statement of Policy Regarding Commission

Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. at 12,546.

After an investigation, OGC may recommend that the Commission find that there is

"probable cause" to believe FECA has been violated.  52 U.S.C. § 30109(a)(3).  Respondents are

entitled to file a responsive brief, *id.*, and OGC prepares a report to the Commission with further

recommendations, 11 C.F.R. § 111.16.  If at least four members of the Commission vote to find

probable cause to believe that a violation has occurred, the Commission must first attempt to

resolve the matter by "informal methods of conference, conciliation, and persuasion, and to enter

into a conciliation agreement" with the respondents.  52 U.S.C. § 30109(a)(4)(A)(i).  If informal

methods of conciliation fail, the Commission may, "upon an affirmative vote of 4 of its

members," file a *de novo* civil enforcement suit in federal district court.  *Id.* § 30109(a)(6)(A).

After the termination of enforcement matters, the Commission places on the public record

categories of documents integral to its decision-making process, including certifications of

4

Commission votes.  FEC, Disclosure of Certain Documents in Enforcement and Other Matters,

81 Fed. Reg. 50,702, 50,703 (Aug. 2, 2016).

FECA provides that the administrative complainant may seek judicial review in this

District, pursuant to 52 U.S.C. § 30109(a)(8)(A), alleging that the Commission unlawfully failed

to act on the complaint or that its dismissal of the complaint was contrary to law.  Defense of

such cases may only be approved through an affirmative vote of four members of the

Commission.  52 U.S.C. §§ 30106(c), 30107(a)(6).  If a court in a review action declares that a

Commission dismissal or failure to act is "contrary to law," the court can order the Commission

to conform to that declaration within 30 days.  *Id.* § 30109(a)(8)(C).  If the Commission fails to

conform to the declaration within 30 days, the complainant may obtain a private right of action

against the administrative respondent for the alleged violations.  *Id*.; *FEC v. Nat'l Conservative

Political Action Comm.,* 470 U.S. 480, 488 (1985).

## II.    FACTUAL BACKGROUND

### A. Administrative Proceedings Related to this Action

On August 23, 2018, the Campaign Legal Center ("CLC") filed an administrative

complaint with the FEC against 45Committee alleging violations of FECA.  The FEC designated

the matter MUR 7486.  (Compl. for Declaratory and Injunctive Relief ("Compl.") ¶ 44 (Docket

No. 1).)  Votes occurred with regard to this matter on June 23, 2020 and December 2, 2021, but

there has been no successful vote to close the Commission's file in the matter.  *45Committee v.

FEC*, Civ. No. 22-502 (D.D.C. February 25, 2022) (Docket No. 18-1, ¶ 6).

On March 24, 2020, CLC sued the FEC, claiming that it had failed to act on CLC's

administrative complaint and that this inaction was contrary to law under 52 U.S.C. §

30109(a)(8)(A).  *CLC v. FEC*, Civ. No. 20-809 (D.D.C. March 24, 2020) (Compl. for

Declaratory and Injunctive Relief (Docket No. 1)).  On November 8, 2021, after a vote on

whether to defend the agency in that case had failed to garner the required four votes, the court in *CLC v. FEC* entered default judgment against the FEC pursuant to 52 U.S.C. § 30109(a)(8)(C). *Id.* (Order (Docket No. 16)).  On April 21, 2022, the court granted CLC's motion for an order declaring that the FEC had failed to conform to the default judgment order.  *Id.* (Order at 1 (Docket No. 32)).  On April 22, 2022, CLC filed a private action against 45Committee alleging the FECA violations from its administrative complaint in MUR 7486.  *CLC v. 45Committee*, Civ. No. 22-1115 (D.D.C. April 22, 2022) (Compl. for Declaratory and Injunctive Relief (Docket No. 1)).

Meanwhile, 45Committee sought information regarding MUR 7486 from the FEC pursuant to the Freedom of Information Act ("FOIA").  On November 19, 2021, the Commission received a FOIA request from 45Committee seeking vote certifications and Commissioner statements of reasons regarding MUR 7486.  *45Committee v. FEC*, Civ. No. 22-502 (D.D.C. February 25, 2022) (Docket No. 18-1, ¶ 3).   The Commission's FOIA Service Center partially granted plaintiff's FOIA request on January 5, 2022.  *Id.* ¶ 7.  The Service Center identified three documents responsive to the request: a June 23, 2020 vote certification; a December 2, 2021 vote certification; and a December 9, 2021 Statement of Reasons of then-Vice Chairman Allen Dickerson.  *Id.* ¶ 6.  The Service Center released to plaintiff a substantially redacted copy of the June 23, 2020 vote certification, revealing only a vote regarding related litigation.  *Id.* ¶ 9.  The Statement of Reasons of then-Vice Chairman Dickerson was withheld in full.  *Id.*  The FOIA Service Center found the statement of reasons and portions of the requested certifications to be protected by the Commission's deliberative process privilege and thus withheld them pursuant to FOIA Exemption 5.  *Id.* ¶ 8.  45Committee administratively appealed the FOIA Service Center's determination on January 7, 2022, and on March 8, 2022, the Commission denied the appeal.  *Id.*

¶ 10.  Subsequently, the Commission approved the release of a mostly redacted copy of the December 2, 2021 vote certification that segregated for release the caption, some introductory material, and the attestation.  *Id.* ¶ 7.

On February 25, 2022, 45Committee filed a complaint with this Court alleging that the FEC violated FOIA by wrongfully withholding non-exempt documents regarding MUR 7486.  *45Committee v. FEC*, Civ. No. 22-502 (D.D.C. February 25, 2022) (Docket No. 1).  The FEC and 45Committee have both filed motions for summary judgment in that matter, and those motions are currently pending before that court.  *Id.* (Docket Nos. 18, 20).

**B.  This Action**

Plaintiff filed this suit principally asserting APA causes of action on June 17, 2022.  (Compl. ¶ 1.)  Plaintiff claims that it has been harmed by lack of access to the vote certifications and statements of reasons in MUR 7486.  (Compl. ¶¶ 3-11.)  Alongside that relatively confined challenge, however, plaintiff makes the sweeping claim that it is only one victim of an alleged "policy" of the Commission to deliberately conceal the FEC Commissioners' voting records and statements of reasons from the respective subjects in otherwise terminated enforcement proceedings in violation of the APA.  (Compl. ¶¶ 1-3.)  Plaintiff alleges that this "concealment policy" has harmed a number of other respondents in other unidentified MURs, over an indeterminate period of time.  (Compl. ¶¶ 3, 7, 32, 39.)[2]

---

[2]      Plaintiff claims that the alleged "concealment policy" has affected at least seven other administrative "respondents[.]"  (Compl. ¶ 3, 7.)  Plaintiff presumably draws this figure from a May 13, 2022 Commissioner statement cited elsewhere in its complaint (Compl. ¶ 35), although that statement actually refers to a total of eight administrative matters or MURs, each of which can involve more than one respondent.  *Statement of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III Regarding Concluded Enforcement Matters* (May 13, 2022), https://www.fec.gov/resources/cms-content/documents/Redacted_Statement_Regarding_Concluded_Matters_13_May_2022_Redacted.pdf ("Statement Regarding Concluded Matters"), at 1.

In support of this theory, 45Committee contends that whenever a motion to find reason to believe that a respondent in an FEC enforcement MUR has violated FECA fails to garner the necessary four Commissioner votes for the matter to proceed, the matter is automatically terminated.  (Compl. ¶¶ 29-30.)  Plaintiff claims that any subsequent failure to immediately close the MUR file, and to disclose the voting records and statement of reasons, violates the Commission's legal obligations.  (*See* Compl. ¶¶ 36-38.)  Plaintiff alleges that, because FECA allows complainants to sue the Commission if it "fail[s] . . . to act" on an administrative complaint and then to sue the respondent directly if the FEC still fails to act, 52 U.S.C. § 30109(a)(8)(A), (C), by failing to close the file the Commission "has left the public and courts with the false impression that it has not taken action" on the administrative complaint, "thus deliberately subjecting the Commission and 45Committee to direct civil lawsuits on false pretenses."  (Compl. ¶ 7 (alterations in original).)  45Committee notes that it is a defendant in such a private right of action stemming from MUR 7486.  (Compl. ¶ 3.)

These claims form the basis of plaintiff's five-count complaint.  Counts I through IV all allege violations of the APA, while Count V seeks mandamus relief.

Count I alleges that defendants' "concealment policy" led the Commission to unlawfully withhold information from 45Committee regarding MUR 7486, and therefore to act "[c]ontrary to law," in violation of 5 U.S.C. § 706(2)(A).  (Compl. ¶¶ 83-92 (citing 5 U.S.C. § 555(e); 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 111.9(b), 111.20(a)).)  Plaintiff seeks to have the Court "hold unlawful and set aside Defendants' concealment policy[.]"  (Compl. ¶ 92.)

Count II alleges that defendants "acted arbitrarily and capriciously by failing to comply with the FEC's regulations[,]" in violation of 5 U.S.C. § 706(2)(A), in failing to notify plaintiff

of the Commission's alleged terminating action regarding MUR 7486 and failing to provide plaintiff with voting records.  (Compl. ¶¶ 93-98 (citing 11 C.F.R. §§ 111.9(b), 111.20(a)).)

Count III alleges that defendants acted arbitrarily and capriciously, and in violation of 5 U.S.C. § 706(2)(A), because they "departed from [their] longstanding policy and practice by adopting a new concealment policy" by "treating MUR 7486 differently than similarly situated enforcement matters in which Defendants administratively closed the file upon split votes failing to find reason to believe a violation occurred[.]"  (Compl. ¶¶ 99-104.)  On this basis plaintiff again seeks to have this Court "hold unlawful and set aside Defendants' concealment policy[.]" (Compl. ¶ 104.)

Count IV alleges that defendants have "unlawfully withheld or unreasonably delayed" notice of the Commission's alleged terminating action in MUR 7486 and release of its voting records and any statement of reasons, in violation of 5 U.S.C. §§ 555(b), 555(e), and 706(1). (Compl. ¶¶ 105-13 (citing 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 111.9(b), 111.20(a)).)

Finally, Count V seeks an order in mandamus (28 U.S.C. § 1361) compelling the Commission to "comply with the law" by notifying 45Committee of the alleged termination of action in MUR 7486 and by releasing the voting records and any statements of reasons in that MUR.  (Compl. ¶¶ 114-19.)

In all Counts, plaintiff requests that the Court order defendants to terminate MUR 7486 and release the voting records and statements of reasons to plaintiff.  (Compl. ¶¶ 92, 98, 104, 113, 119.)  Plaintiff's Prayer for Relief requests further sweeping judicial intervention.  It seeks not only "[a]n order compelling Defendants to issue the required notification to 45Committee of the Commission's terminating action in MUR 7486 and publicly release the voting records and any statement of reasons," but also an "injunction requiring Defendants to issue the required

notifications to complainants and respondents and to publicly release Commission's [sic] voting records and statements of reasons in any enforcement matter after the Commission fails to garner four votes to initiate an enforcement action based on the complaint."  (Compl. Prayer for Relief, paragraphs b, c, d.)

## ARGUMENT

Plaintiff's complaint should be dismissed for lack of jurisdiction and failure to state a claim upon which relief can be granted.  FECA's judicial review provision, 52 U.S.C. § 30109(a)(8), is the only means to challenge the agency's handling of administrative enforcement matters.  Plaintiff's sweeping challenge to the agency's handling of its enforcement proceedings also fails to state a claim under the APA.  Such proceedings are legally committed to the agency's sound discretion, and plaintiff's challenge to the alleged "concealment policy" falls far short of the basic requirement that APA challenges identify a final, discrete agency action, as opposed to a generalized complaint about agency behavior.  Indeed, plaintiff falls so short of showing a legally cognizable interest in the information it seeks with regard to MUR 7486, not to mention the other matters it describes, that it has failed to establish even Article III standing.

## I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint.  The party claiming subject matter jurisdiction bears the burden of demonstrating that jurisdiction exists.  *Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008).  When reviewing a motion to dismiss for lack of subject matter jurisdiction, each court has "'an affirmative obligation to insure that it is acting within the scope of its jurisdictional authority.'"  *Jones v. Ashcroft,* 321 F. Supp. 2d 1, 5 (D.D.C. 2004) (citation omitted).  In evaluating such motions, courts review the complaint liberally and grant plaintiffs the benefit of all inferences that can be derived from the facts alleged.  *Barr v. Clinton,*

370 F.3d 1196, 1199 (D.C. Cir. 2004).  To determine whether it has jurisdiction over a claim, the

court may consider materials outside the pleadings.  *Settles v. U.S. Parole Comm'n,*

429 F.3d 1098, 1107 (D.C. Cir. 2005).  No action of the parties can confer subject matter

jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement

and a constitutional requirement under Article III.  *Akinseye v. District of Columbia,*

339 F.3d 970, 971 (D.C. Cir. 2003).

Dismissal of a complaint is also appropriate under Rule 12(b)(6) where, accepting the

factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's

favor, the complaint fails as a matter of law to state a claim on which relief can be granted.  Fed.

R. Civ. P. 12(b)(6); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012) (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678

(2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face.  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft,* 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 570).  A claim must be dismissed "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at

558.

## II.   PLAINTIFF'S CLAIMS ARE PRECLUDED BECAUSE FECA'S JUDICIAL REVIEW PROVISION IS THE EXCLUSIVE PROCEDURE FOR CHALLENGING THE FEC'S HANDLING OF ENFORCEMENT PROCEEDINGS

Plaintiff cannot bring APA or mandamus claims to challenge the Commission's handling

of administrative enforcement complaints.  "'Within constitutional bounds, Congress decides

what cases the federal courts have jurisdiction to consider.'"  *Am. Fed'n of Gov't Emps. v.*

11

*Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019) (quoting *Bowles v. Russell*, 551 U.S. 205, 212 (2007)).  "District courts have jurisdiction over civil actions arising under the Constitution and laws of the United States, 28 U.S.C § 1331, but Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review."  *Id.  See also City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979) ("If … there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.").

To decide whether a statutory review procedure is exclusive, courts "use the two-step framework set forth in *Thunder Basin Coal Company v. Reich*, 510 U.S. 200 [] (1994)."  *Nat'l Veterans Affs. Council v. Fed. Serv. Impasses Panel*, Civ. No. 20-00837, 2021 WL 5936407, at *27 (D.D.C. Feb. 10, 2021).  Under that case, "Congress intended that a litigant proceed exclusively through a statutory scheme ... when (i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'"  *Id.*, at *27-28 (quoting *Jarkesy v. S.E.C.*, 803 F.3d 9, 15 (D.C. Cir. 2015)).

At the same time, judicial review of agency action under the APA is available only where "made reviewable by statute" and where there is "no other adequate remedy" for final agency action.  5 U.S.C. § 704.  "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."  *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  Thus, the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures."  *Id*. (internal quotation marks omitted); *see Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 846 F.3d 1235, 1244-45 (D.C. Cir. 2017) (same).  To determine the proper basis for judicial review, courts

12

examine the relevant statute's language, structure, and legislative history.  *See Block v. Cmty.*
*Nutrition Inst.*, 467 U.S. 340, 349 (1984) (explaining that a "detailed mechanism for judicial
consideration of particular issues at the behest of particular persons" may demonstrate that other
forms of judicial review are "impliedly precluded"); *Klayman v. Obama*, 957 F. Supp. 2d 1, 20
(D.D.C. 2013) (concluding that the Foreign Intelligence Surveillance Act precluded plaintiffs'
claim for judicial review pursuant to the APA).

Plaintiff's complaint challenges the Commission's handling of MUR 7486, specifically
alleging that the agency failed to dismiss the matter following a failed vote to find reason to
believe a violation occurred and failed to provide plaintiff with related voting records.  (*See*
Compl. ¶ 10.)  However, no separate APA or mandamus claim exists to pursue those challenges
because FECA provides an adequate and exclusive judicial review mechanism.  Even in cases
such as this one, where FECA itself does not permit review of plaintiff's claims because the suit
is not authorized by FECA's judicial review provision, FECA still precludes plaintiffs' APA and
mandamus claims, which should therefore be dismissed pursuant to Rule 12(b)(6).[3]

In section 30109(a)(8), Congress delineated the scope of judicial review available in an
action challenging alleged FEC impropriety in handling an administrative complaint.  Congress
explicitly provided that only FEC administrative complainants may seek judicial review and that
they may do so only in two narrow circumstances.  FECA states that when a complainant is
"aggrieved by an order of the Commission dismissing a complaint . . . or by a failure of the
Commission to act on such complaint during the 120-day period beginning on the date the

---

[3]      Plaintiff's APA claim could alternatively be dismissed for a lack of subject matter
jurisdiction pursuant to Rule 12(b)(1) rather than Rule 12(b)(6) on this ground, as courts have
"not always been consistent in maintaining the[] distinctions" between the two rules.  *Sierra*
*Club v. Jackson*, 648 F.3d 848, 853 (D.C. Cir. 2011) (internal quotation marks omitted).

complaint is filed [the complainant] may file a petition with the United States District Court for the District of Columbia." 52 U.S.C. § 30109(a)(8)(A). As noted, this review is available only as to "a complaint filed by such party," *i.e.* the administrative complainant. *Id.*

FECA provides the exclusive mechanism for judicial review of allegations that the Commission unlawfully failed to act on a complaint or that its dismissal of a complaint was contrary to law. The statute specifies that (a) the statutory cause of action is available only to a complainant (b) whose complaint was dismissed or who alleges a failure to act; (c) any petition for judicial review must be filed in the United States District Court for the District of Columbia; (d) the available relief is a judicial declaration that the failure to act or dismissal of the complaint is contrary to law and an order "direct[ing] the Commission to conform with such declaration"; and (e) the safety valve in the event the agency fails to conform with such an order is a private right of action by the complainant. 52 U.S.C. § 30109(a)(8)(C).

Because FECA contains this explicit and detailed review provision, there is clearly an "adequate remedy" as described in the APA, 5 U.S.C. § 704. FECA's "detailed mechanism for judicial consideration of particular issues at the behest of particular persons" precludes other forms of judicial review, including review under the APA. *See Block*, 467 U.S. at 349. Where, as here, Congress has "fashion[ed] . . . an explicit provision for judicial review" of certain agency action or failure to take action and has "limit[ed] the time to raise such a challenge," the Court of Appeals has found that "it is 'fairly discernible' that Congress intended that particular review provision to be exclusive." *Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 664 (D.C. Cir. 2014); *see Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009). In addition, FOIA represents a further avenue for interested parties to seek the disclosure of agency records, and one that plaintiff here has in fact availed itself of to seek the very enforcement records at issue.

14

*See 45Committee v. FEC*, Civ. No. 22-502 (D.D.C. February 25, 2022) (Docket No. 1).  Thus, while FECA is clearly an "adequate remedy" for judicial review of the handling of FEC enforcement proceedings, it is not plaintiff's exclusive remedy, and plaintiff has not shown that these remedies are inadequate.

       FECA's overall structure and legislative history further confirm Congress's intent to limit the scope of judicial review of matters within the FEC's area of responsibility.  FECA grants the Commission "exclusive jurisdiction with respect to the civil enforcement" of the Act, 52 U.S.C. § 30106(b)(1), and it establishes a specific system of judicial review that "funnels all challenges to the FEC's handling of complaints through the U.S. District Court for the District of Columbia," *Citizens for Resp. & Ethics in Wash. v. FEC*, 164 F. Supp. 3d 113, 119 (D.D.C. 2015) ("*CREW* 2015") (citing 52 U.S.C. § 30109(a)(8)(A)).  "The legislative history of [FECA] confirms that '[t]he delicately balanced scheme of procedures and remedies set out in the Act is intended to be the exclusive means for vindicating the rights and declaring the duties stated therein.'"  *Stockman v. FEC*, 138 F.3d 144, 154 (5th Cir. 1998) (alteration in original) (quoting 120 Cong. Rec. 35,314 (1974) (remarks of Rep. Hayes, Conference Committee Chairman)).

       Every court that has considered the nature of the judicial-review procedures in section 30109(a)(8) has found that those FECA procedures are exclusive, including with respect to APA claims challenging FEC administrative proceedings.  In fact, the D.C. Circuit has confirmed that section 30109(a)(8) is "as specific a mandate as one can imagine" and accordingly concluded that "the procedures it sets forth — procedures purposely designed to ensure fairness not only to complainants but also to respondents — must be followed before a court may intervene."  *Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996) (per curiam).  More recently, this District Court has repeatedly held that the review procedure in section 30109(a)(8) precludes an APA claim for

dismissal of an administrative complaint.  *Citizens for Responsibility & Ethics in Wash. v. FEC*,

243 F. Supp. 3d 91, 104 (D.D.C. 2017) (FECA provides an adequate remedy so there is no

parallel claim for relief under the APA); *CREW* 2015, 164 F. Supp. 3d at 120 ("This [section

30109(a)(8) judicial review mechanism] precludes review of FEC enforcement decisions under

the APA."); *Citizens for Resp. & Ethics in Wash. v. FEC*, 363 F. Supp. 3d 33, 44 (D.D.C. 2018)

("for the same reasons that judicial review of the challenged enforcement actions is precluded by

FECA, it is precluded under APA: because the statute expressly limits review to the two

circumstances identified in 52 U.S.C. § 30109(a)(8)(A)").

Judicial determinations that FECA precludes review of APA claims as to the handling of

administrative enforcement complaints extends not just to claims by administrative

complainants, but also to claims by administrative *respondents* such as plaintiff.  In *Stockman*, a

congressman sued to enjoin the FEC from further investigation of his campaign, alleging that the

FEC unduly delayed in its investigation in violation of FECA and the APA.  138 F.3d at 146.

After the district court dismissed the matter on the merits, the congressman appealed, and the

Fifth Circuit held that FECA precluded judicial review of the delay claim.  *Id.* at 152.  The court

first noted the "substantial evidence that Congress set forth the exclusive means for judicial

review under [FECA]" in section 30109(a)(8).  *Id.* at 156.  The court then observed that "when a

statute provides a detailed mechanism for judicial consideration of particular issues at the behest

of particular persons, judicial review of those issues at the behest of other persons may be found

to be impliedly precluded." *Id.* at 154 (quoting *Block*, 467 U.S. at 349).  The court determined

that "[p]rudential considerations and the nature of FEC investigations also support[ed] [its]

holding" as "allowing the person under investigation to bring suit in district court any time he

felt aggrieved by the investigation could compromise the ability of the agency to investigate and

16

enforce the Act."  *Id.* at 154-55 (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 242–43 (1980)) ("Judicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes.").

In another case brought by administrative respondents, *Fieger v. Gonzales*, the plaintiffs alleged, *inter alia*, that the FEC had failed to conduct an investigation of plaintiffs as required by FECA and therefore the agency was in violation of the APA and the mandamus statute.  Civ. No. 07-10533, 2007 WL 2351006, at *8 (E.D. Mich. Aug. 15, 2007), *aff'd sub nom. Fieger v. U.S. Atty. Gen.*, 542 F.3d 1111 (6th Cir. 2008).[4]  The court rejected these claims, concluding that "Congress generally has deprived federal courts of jurisdiction to review the Commission's handling of its administrative complaints[,]" citing *Stockman*, 138 F.3d at 153, and *Perot*, 97 F.3d at 559.  *Id.* at *10.  After noting that FECA's "two narrow exceptions" did not apply to the respondent's claims, the court concluded that it "must assume Congress intended to deny anyone other than an administrative complainant (including administrative *respondents*, such as Plaintiffs) the right to petition for judicial review."  *Id.* (citing *Block*, 467 U.S. at 349) (emphasis in original).  The judge in a third case brought by a respondent reached the same conclusion. *Beam v. Gonzales*, 548 F. Supp. 2d 596, 610-12 (N.D. Ill. 2008).

Under this precedent, plaintiff's claims here are clearly precluded.  52 U.S.C. § 30109(a)(8) permits only claims by administrative complainants.  45Committee is indisputably an administrative respondent with respect to MUR 7486.  (Compl. ¶ 44.)  Congress therefore intended to bar its claims from judicial review.  *See Fieger*, 2007 WL 2351006, at *10 ("[T]he Court must assume Congress intended to deny anyone other than an administrative complainant

---

[4]      Plaintiff there sought to dismiss a related investigation by the U.S. Department of Justice.

(including administrative *respondents*, such as Plaintiffs) the right to petition for judicial review.") (citing *Block*, 467 U.S. at 349).

The APA does not provide an avenue for plaintiff to circumvent the clear intent of Congress to make FECA's judicial review provisions exclusive to certain administrative complainants.  The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  "Excluded from this court's review, however, are agency actions that are 'committed to agency discretion by law.'" *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1030 (D.C. Cir. 2007).  "Enforcement actions" generally fall within this reviewability exclusion because "'a court would have no meaningful standard against which to judge the agency's exercise of discretion' in deciding how to enforce the statutory provisions." *Id.* (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).  In fact, "'a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.'" *Orlov v. Howard*, 523 F. Supp. 2d 30, 37 (D.D.C. 2007) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).  "[A] complaint seeking review of agency action 'committed to agency discretion by law' has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6)." *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (internal citation omitted); *id.* at 855 ("[I]n cases that involve agency decisions not to take enforcement action, we begin with the presumption that the agency's action is unreviewable."); *see also Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (holding that the APA provides no cause of action to review an agency's revocation of an employee's security clearance where that decision is "committed to agency discretion by law").

At issue here is the Commission's alleged failure to terminate MUR 7486 (and a handful of additional administrative proceedings) and disclose the records in those proceedings following a failed reason-to-believe or probable-cause-to-believe vote.  Plaintiff does not dispute that any Commission obligation to disclose records from an enforcement proceeding comes into play only when the Commission "terminates its proceedings[.]"  (Compl. ¶ 26 (citing 11 C.F.R. §§ 111.9(b); 111.20(a)).)  Yet while plaintiff clearly objects to the MUR 7486 file not being closed at a particular time, the decision to close an administrative matter falls squarely within the agency's discretion.  *See infra*, Part III.A.

Plaintiff's claims regarding the FEC's handling of these enforcement matters are not meaningfully distinguishable from the many instances in which courts have found that APA claims challenging such proceedings were precluded by FECA, and plaintiff has provided no reason why this Court should buck this precedent.  *See, e.g., Citizens for Resp. & Ethics in Wash.*, 243 F. Supp. 3d at 104 (complainants); *CREW 2015* (complainant); *Citizens for Resp. & Ethics in Wash.*, 363 F. Supp. 3d at 44 (complainant); *Stockman*, 138 F.3d at 146 (respondent); *Fieger*, 2007 WL 2351006, at *8 (respondent); *Beam*, 548 F. Supp. 2d at 610-12 (respondent).

In sum, section 30109(a)(8) provides the exclusive mechanism for challenging the Commission's handling of administrative complaints and limits the scope of relief available to plaintiff.  Allowing APA and mandamus review of plaintiff's claims here would undo the careful limitations Congress established with FECA.  And because plaintiff's complaint relies entirely on the APA and the mandamus statutes, it fails to state a claim and should be dismissed.

**III.    PLAINTIFF ALSO FAILS TO STATE A CLAIM BECAUSE IT HAS NOT IDENTIFIED A FINAL, DISCRETE AGENCY ACTION, AND THE ACTIONS IT DOES CHALLENGE ARE COMMITTED TO AGENCY DISCRETION BY LAW**

**A.  The FEC's Determination as to When to Terminate Enforcement Proceedings Is Not Reviewable Because It Is Committed to the Agency's Discretion by Law**

The APA, by its explicit terms, does not provide for judicial review "to the extent that . . . agency action is committed to the agency discretion by law." 5 U.S.C. § 701(a)(2). As a result, "agency enforcement decisions, to the extent they are committed to agency discretion, are not subject to judicial review for abuse of discretion." *Citizens for Resp. & Ethics in Wash. v. FEC*, 892 F.3d 434, 442 (D.C. Cir. 2018). Accordingly, under § 701(a)(2), "certain categories of administrative decisions are unreviewable," among them "agency decisions not to institute enforcement proceedings." *Id.* at 439 (quoting *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006)). In addition, "§ 701(a)(2) bars judicial review when there is no 'law' to apply in judging how and when an agency should exercise its discretion[.]" *Id.* at 440 (citing *Heckler v. Chaney*, 470 U.S. at 830).

Here, while plaintiff is ultimately seeking "information," it is in effect challenging the Commission's failure to consider enforcement proceedings terminated following any vote that fails to find reason to believe a FECA violation occurred. Plaintiff does not dispute that any Commission obligation to disclose the record in an enforcement proceeding follows only when the Commission "terminates its proceedings[.]" (Compl. ¶ 26 (citing 11 C.F.R. §§ 111.9(b); 111.20(a)).) And plaintiff does not challenge the FEC's practice of holding votes to close the administrative file. Indeed, plaintiff acknowledges that "[b]y longstanding policy and practice, the Commission has traditionally held an administrative vote to close the enforcement file[.]" (Compl. ¶ 27.) What plaintiff objects to is the way in which certain Commissioners have voted (*i.e.*, exercised their discretion) in this regard in a small number of matters. (Compl. ¶ 32

20

("Commissioners Walther, Broussard, and Weintraub have refused to vote to administratively close the files in eight enforcement matters before the Commission[.]").)

Critically, the history of the agency's enforcement process belies plaintiff's claim that the vote to close the administrative file is "a purely ministerial and legally insignificant act[.]" (Compl. ¶ 30.)  In fact, the Commission has often held one reason-to-believe or probable-cause-to-believe vote that does not pass, only to determine in a later vote that there was in fact reason to believe or probable cause to believe on the same claim.  *See, e.g.*, FEC MURs 7350, 7351, 7357, and 7382 (Cambridge Analytica LLC, *et al.*);[5]  MUR 6623 (Scalise for Congress, *et al.*);[6] MUR 5754 (MoveOn PAC, *et al.*).[7]  While plaintiff cites five individual MURs in which the Commission did vote to close the file following a failed reason-to-believe vote, (Compl. ¶ 30,) these examples only serve to underline the fact that Commissioners view each such vote differently, and they exercise their discretion in light of the facts in each case.

---

[5]      Certification, MURs 7350, 7351, 7357 & 7382 (Cambridge Analytica LLC, *et al.*) (Apr. 12, 2019) (failing, 2-0, to find reason to believe on a series of claims), https://www.fec.gov/files/legal/murs/7350/7350_27.pdf.  *See* Certification, MURs 7350, 7351, 7357 & 7382 (Cambridge Analytica LLC, *et al.*) (July 30, 2019) (voting 4-0 to find reason to believe on several of the same claims), https://www.fec.gov/files/legal/murs/7350/7350_29.pdf; Certification, MURs 7350, 7351, 7357 & 7382 (Cambridge Analytica LLC, *et al.*) (Aug. 22, 2019) (same), https://www.fec.gov/files/legal/murs/7350/7350_37.pdf.

[6]      Amended Certification, MUR 6623 (Scalise for Congress, *et al.*) (July 31, 2012) (voting 3-3 on whether there was reason to believe one respondent violated FECA and then later voting 5-1 to find reason to believe regarding that respondent), https://eqs.fec.gov/eqsdocsMUR/13044330654.pdf.

[7]      Certification, MUR 5754 (MoveOn PAC, *et al.*) (Sept. 14, 2004) (voting 3-2 on whether there was reason to believe), https://www.fec.gov/files/legal/murs/5754/0000590C.pdf; Certification, MUR 5754 (MoveOn PAC, *et al.*) (Sept. 28, 2004) (voting 5-1 to find reason to believe), https://www.fec.gov/files/legal/murs/5754/0000590D.pdf.

The agency's longstanding practices demonstrate that votes on whether to close the administrative file are a textbook exercise of an agency's discretion in enforcement proceedings. *See Citizens for Resp. & Ethics in Wash.*, 892 F.3d at 441 (citing 5 U.S.C. § 701(a)(2)).  Indeed, the very fact that the action is subject to a vote is evidence of the discretion inherent in the decision.  Thus, as noted *supra* p. 20, whether to continue or conclude enforcement proceedings falls squarely within the "areas traditionally committed to agency discretion."  *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019); *see Sierra Club*, 648 F.3d at 855 ("[I]n cases that involve agency decisions not to take enforcement action, we begin with the presumption that the agency's action is unreviewable."); *Ass'n of Irritated Residents*, 494 F.3d at 1030 ("Excluded from this court's review, however, are agency actions that are 'committed to agency discretion by law.'"); *id.* (quoting *Heckler v. Chaney*, 470 U.S. at 830) ("Enforcement actions" generally fall within this reviewability exclusion because "'a court would have no meaningful standard against which to judge the agency's exercise of discretion' in deciding how to enforce the statutory provisions"); *Fieger*, 2007 WL 2351006, at *10 ("It is well settled that the question of whether and when prosecution is to be instituted is within the discretion" of the authorized government officials) (quoting *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970)).  And as explained above, *supra* pp. 15-18, this principle as to agency discretion has resulted in the dismissal of APA claims an administrative respondent made against the FEC.  *See Beam v. Gonzales*, 548 F. Supp. 2d 596, 612 (N.D. Ill. 2008).  Rejecting those claims, the court in *Beam* explained that it "agree[d] that there is no discrete, non-discretionary action to compel in this case."  *Id.*

Recent public statements by FEC Commissioners demonstrate that the legal significance of a failed reason-to-believe vote in a MUR is a contested one, undermining plaintiff's claim that

the Commissioners' duty to close the file in such cases is "ministerial and non-discretionary[.]" (Compl. ¶ 10.)  In its Complaint plaintiff refers to the recent statement by three FEC Commissioners arguing that certain unidentified MURs should be considered closed.  (Compl. ¶ 35 (referencing Statement Regarding Concluded Matters).)  However, the votes of three Commissioners are insufficient to adopt FEC policy, which takes four affirmative votes.  52 U.S.C. §§ 30106(c), 30107(a)(8).  It has also traditionally taken four votes to end an FEC enforcement matter, and other FEC commissioners have disagreed with the statement on which plaintiff relies.  *See*, *e.g.*, Statement of Commissioner Ellen L. Weintraub On the Opportunities Before the D.C. Circuit in the *New Models* Case To Re-Examine *En Banc* Its Precedents Regarding "Deadlock Deference" at 2-3, 9-16 (Mar. 2, 2022)[8] ("Weintraub Statement") (contending that further Commission action remains possible in matters until there are successful motions to close the file).[9]

　　　Plaintiff's claims fail for the additional reason that there is no "law" to apply in judging how the agency should exercise its discretion here.  *Citizens for Resp. & Ethics in Wash.*, 892 F.3d at 440.  Plaintiff points to certain statutory requirements that constrain the FEC's discretion,

---

[8]　　　https://www.fec.gov/resources/cms-content/documents/2022-03-02-ELW-New-Models-En_Banc.pdf

[9]　　　An exchange from decades ago demonstrates a previous understanding that it would be possible for Commissioners to have a series of votes in a MUR without a successful vote to close the file.  In 1995, at an American Bar Association symposium, it was noted that a "previous General Counsel of the Commission [had been] asked the question on a case that looked like it was heading for a 3-3 split."  *Symposium on Campaign Finance Enforcement: A Comparative View,* 11 J. L. & Pol. 1, 12 (1995) (quoting then-FEC General Counsel Lawrence M. Noble). The previous General Counsel had been asked, "[w]hat happens if the Commissioners split 3-3, and just turn to you and say we're not going to close the file?"  *Id.*  The General Counsel in 1995 explained that in that eventuality he "would just send the case back up every week until something happens."  *Id.*  He further noted that (as of that time) "in practice what happens after a 3-3 vote is that the Commission then votes unanimously to close the file and make the matter public."  *Id.*

23

including 52 U.S.C. § 30109(a)(4)(B)(ii), which requires the FEC to "make public" a "determination" that "a person has not violated [the] Act[.]"  (Compl. ¶ 26.)  However, no statute plaintiff cites states that such actions must occur prior to closure of an enforcement file, nor that an enforcement matter must be considered closed following a single failed reason-to-believe vote.  Indeed, such an interpretation is contradicted by years of agency practice.  Courts have rejected other, similar attempts to read deadlines and mandates into FECA.  *See Stockman*, 138 F.3d at 152 (noting that FECA "does not create a deadline in which the FEC must act or create a private cause of action to enforce this provision."); *Fieger*, 2007 WL 2351006, at *9 ("The Court finds that nothing in section [30109] or any other provision of the Act imposes any deadline for the Commission to take particular investigatory actions.").

Finally, prudential concerns caution against plaintiff's reading.  If this Court were to accept plaintiff's position and find the agency has no discretion as to file closure, the result would be hazardous to the customary functioning of the FEC's enforcement process.  For one thing, it could result in dismissals of enforcement matters when that was not the will of a majority of Commissioners, and even when a motion to dismiss a matter had not passed with the vote of four Commissioners.  Indeed, three Commissioners could effectively dismiss a matter at any time, even if three other Commissioners disagreed, which would be contrary to FEC policy and practice.  If FEC enforcement matters automatically terminated when a Commission vote to find reason to believe did not reach the four-vote threshold, it could end the ability of Commissioners to further consider matters and inhibit commissioners' ability to develop their views and to reach consensus following deadlocked votes, as described above.

Because the closure of the administrative file is subject to the discretion of the Commission and the vote of individual Commissioners, the challenged "agency action is

committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Plaintiff has therefore failed to "state a claim to relief that is plausible on its face."  *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

## B.  Plaintiff's Broad "Concealment Policy" Allegations Do Not Challenge Final Agency Action and Therefore Fail to State a Claim Upon Which Relief Can Be Granted

Plaintiff has identified no "policy" that can be considered final agency action subject to APA review, and instead it merely points to the handling of a small and vaguely defined group of unidentified FEC enforcement matters.  To be reviewable, a challenged agency action must "either (1) reflect 'final agency action,' 5 U.S.C. § 704, or (2) 'constitute a de facto rule or binding norm that could not properly be promulgated absent the notice-and-comment rulemaking required by § 553 of the APA.'"[10]  *Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798, 806 (D.C. Cir. 2006).  An agency action is final if it is both "the consummation of the agency's decisionmaking process" and a decision by which "rights or obligations have been determined" or from which "legal consequences will flow[.]"  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).  Therefore, the APA authorizes challenges to "discrete" federal agency action; it does not contemplate entangling the courts in managing the day-to-day business of the agencies.  *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 64 (2004); *see also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 891 (1990) (stating that, under the APA, a plaintiff "must direct its attack against some particular 'agency action' that causes it harm").

---

[10]      Plaintiff does not challenge the alleged "concealment policy" as a *de facto* regulation issued in violation of APA's notice-and-comment requirements, and in any event such a challenge would be meritless.  *See CREW 2015*, 164 F. Supp. 3d at 118 (finding that even if a repeated interpretation by several FEC Commissioners in MURs were assumed to have become a broad policy of the agency, new principles announced through adjudication are not treated as regulations for purposes of judicial review).

Plaintiff cannot meet these standards.  It clearly objects to what it perceives to be a practice in the handling of certain FEC enforcement matters, but the court's jurisdiction "does not extend to reviewing generalized complaints about agency behavior."  *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) (citing *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (rejecting challenge to "a generalized, unwritten administrative 'policy'").  This is because even "an on-going program or policy is not, in itself, a 'final agency action' under the APA."  *Id.* (quoting *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001)).  As a result, the APA requires plaintiffs to challenge a "discrete agency action" rather than launching "a broad programmatic attack" on an agency's compliance with a statutory scheme.  *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 49 (D.D.C. 2019) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. at 64).  *See also Del Monte Fresh Produce N.A., Inc. v. United States,* 706 F. Supp. 2d 116, 119 (D.D.C. 2010) (granting motion to dismiss where importer's claim that FDA "pattern and practice" of delay in produce inspections was not justiciable under the APA); *Inst. for Wildlife Prot. v. Norton,* 337 F. Supp. 2d 1223, 1226-27 (W.D. Wash. 2004) (dismissing plaintiffs' claims that an agency engaged in a pattern and practice of delay in responding to citizen petitions under the Endangered Species Act, in violation of the APA).

Courts have rejected claims similar to plaintiff's claims here.  For example, in *Bark v. United States Forest Service*, plaintiffs challenged the U.S. Forest Service's issuance of several special use permits, along with its overall "policy and practice" of issuing such permits, on the grounds that the permits allowed concessioners to charge unlawful fees without proper review.  37 F. Supp. 3d at 49.  The court granted summary judgment to the Forest Service, finding that the plaintiffs had failed to articulate a justiciable final agency action.  *Id*. at 50.  Plaintiffs had

pointed to "no written rules, orders, or even guidance documents of the Forest Service that set forth the supposed policies challenged," and they could not attach a "'policy' label to their own amorphous description" of the agency's practices.  *Id.*  Rather, "the Forest Service's alleged 'policy' . . . [was] found in no authoritative text, and [was] instead a 'generalized complaint about agency behavior' that gives rise to no cause of action."  *Id.* at 51 (citing *Cobell v. Kempthorne*, 455 F.3d at 307).  Like the *Bark* plaintiffs, plaintiffs here have pointed to "no written rules, orders, or even guidance documents" articulating an agency policy, and rather "appear to have attached a 'policy' label to their own amorphous description of the [Commission's] practices."  *Id.* at 50.

Similarly, in *Lillemoe v. United States Department of Agriculture, Foreign Agriculture Service*, plaintiffs claimed that the Foreign Agricultural Service ("FAS") violated the APA by selectively applying its program regulations and policies.  Civ. No. 15-02047, 2020 WL 1984256, at *1 (D.D.C. Apr. 27, 2020).  However, "[r]ather than challenging any one decision by FAS, the plaintiffs . . . [challenged] FAS's alleged *de facto* policy as a whole."  *Id.* at *7.  The plaintiffs put forward evidence of four actions by FAS against plaintiffs that allegedly proved "FAS maintained a 'policy' of singling them out[.]"  *Id.*  The court found this evidence insufficient, noting that, "[a]part from these four, discrete adverse actions, the plaintiffs [were] unable to identify, and the record [did] not contain, any evidence that FAS had an overarching policy," and that "plaintiffs [had] failed to establish the existence of a *de facto* policy of arbitrary treatment towards them."  *Id.*  As a result, "there [was] no final agency action for the Court to review."  *Id.* n.4 (citing 5 U.S.C. § 704; *Bennett*, 520 U.S. at 177–78).  Here again, 45Committee has made allegations about the handling of a number of other matters to which it objects, but offered no evidence of an "overarching policy" subject to APA review.

And in *Citizens for Responsibility & Ethics in Washington v. United States Department of Homeland Security*, the plaintiffs alleged that the Department of Homeland Security had violated the Federal Records Act by maintaining a deficient records management program.  387 F. Supp. 3d at 42.  The court found that plaintiffs did not challenge a final agency action and granted the government's motion to dismiss.  *Id.* at 44.  The court first distinguished between an agency's blanket refusal to comply with a statutory mandate and discrete instances of non-compliance, finding plaintiffs' claims fit in the latter category and were therefore not justiciable.  *Id.* at 53. The court then rejected the plaintiffs' claim that the agency had a policy of refusing to memorialize its decision-making process, finding that the claim "supported by two examples of purported bad conduct by a subcomponent agency [was] too vague and conclusory to plausibly assert a ... claim[.]"  *Id.* at 55 (internal citations omitted).

Here, plaintiff's challenge to the Commission's alleged "concealment policy" is particularly meritless because the votes or other actions of *three* Commissioners do not — and by statute cannot — establish any enforcement policy on behalf of the Commission.  Because FECA requires that any affirmative Commission action to investigate or formally advance enforcement against alleged violations be approved by a vote of at least four Commissioners, 52 U.S.C. §§ 30106(c), 30107(a), a group of three Commissioners is "controlling" only for purposes of judicial review of a decision not to pursue such investigative or enforcement actions.  *See FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1475-76 (D.C. Cir. 1992).  But three Commissioners cannot establish any policy or regulation on behalf of the agency.  52 U.S.C. § 30106(c) ("All decisions of the Commission with respect to the exercise of its duties and powers under the provisions of this Act shall be made by a majority vote of the members of the Commission.").  Tellingly, plaintiff provides few details on how the alleged policy was

implemented by the three Commissioners, arguing only that they "have forced the Commission to follow a new policy and practice of refusing to administratively close an enforcement matter file after the Commissioners failed to find reason to believe a violation occurred" in eight enforcement proceedings, only one of which (MUR 7486) is identified. (Compl. ¶¶ 32, 34.)  By failing to identify any legal basis by which these Commissioners could have imposed such a "policy" upon the agency, plaintiff's complaint fails to state a plausible claim for relief.

Even assuming three Commissioners could establish such a policy, plaintiff's sweeping but vague "concealment policy" allegations fail to provide sufficient evidence of the challenged "policy" and thus do not state a claim upon which relief can be granted.  While plaintiff references eight enforcement matters (Compl. ¶¶ 3, 7), plaintiff identifies only one specific instance of the Commission carrying out its alleged "policy":  MUR 7486.  Courts have repeatedly found that substantially more detailed evidence of agency practices nevertheless failed to articulate a "final agency action" as opposed to "generalized complaints about agency behavior."  *See, e.g., Lillemoe*, 2020 WL 1984256, at *7 (four actions against plaintiffs); *Bark*, 37 F. Supp. 3d at 50 (issuing five permits to defendant-intervenors); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d at 55 (offering two examples of purported bad conduct by a subcomponent agency was "too vague and conclusory" and failed to plausibly assert an "overall agency culture of resist[ance]").

Plaintiff claims that the alleged "concealment policy" "depart[s] from [the FEC's] longstanding policy and practice" (Compl. ¶ 31), citing instances where the Commission did vote to close the administrative file following a failed vote to find reason to believe a violation of FECA occurred.  (Compl. ¶ 29.)  Again, however, the history of the agency's enforcement process belies plaintiff's claim that such immediate dismissals are automatic or required.  As

detailed *supra*, pp. 20-21, the Commission has often held one reason-to-believe or probable-cause-to-believe vote that does not pass, only to determine in a later vote that there was in fact reason to believe or probable cause to believe on the same claim.

Moreover, in the roughly four years since the administrative complaint against plaintiff in MUR 7486 was filed, the agency has closed at least 594 MURs.[11]  Plaintiff alleges that eight MURs have been wrongly held open, but even assuming the truth of that claim, eight matters out of 594 is clearly insufficient to establish a general "policy" to challenge under the APA.  Further, the Commission's file closures have included a number of matters that were the subject of cases alleging unlawful delay.  *See*, *e.g.*, MUR 7207, https://www.fec.gov/data/legal/matter-under-review/7207/  (handling of matter challenged in *Free Speech for People, et al. v. FEC*, Civ. No. 21-3206 (D.D.C.); MUR 7422, https://www.fec.gov/data/legal/matter-under-review/7422/ (handling of matter challenged in *CREW v. FEC*, Civ. No. 19-2753 (D.D.C)).  Plaintiff provides this Court with only anecdotes directly contradicted by a more complete review of FEC enforcement practices, and it has thus failed to "state a claim to relief that is plausible on its face."  *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

Finally, even assuming plaintiff was challenging a justiciable Commission policy, the relief plaintiff seeks is untenable.  Plaintiff would have the Court "set[] aside Defendants' new concealment policy" and issue an injunction "requiring Defendants to issue the required notifications to complainants and respondents and to publicly release Commission's voting

---

[11]     FEC, STATUS OF ENFORCEMENT – FISCAL YEAR 2022, SECOND QUARTER (01/01/22-03/31/22) 4, https://www.fec.gov/resources/cms-content/documents/Status_of_Enforcement_Second_Quarter_2022_05-06-22_Redacted.pdf (reflecting matters closed in the agency's fiscal years 2019-21 and first two quarters of fiscal year 2022).

records and statements of reasons in *any enforcement matter* after the Commission fails to garner

four votes to initiate an enforcement action based on the complaint[.]"  (Compl. at 29 (Prayer for

Relief) (emphasis added).)  However, the Court may not "require the agency to follow a detailed

plan of action" and "may not prescribe specific tasks for [the agency] to complete[.]"  *Cobell v.*

*Kempthorne*, 455 F.3d at 307.  Rather, "it must allow [the agency] to exercise its discretion and

utilize its expertise in complying with broad statutory mandates."  *Id.* (citing *Cobell v. Norton*,

240 F.3d at 1099, 1106).  Plaintiff here would have the Court supersede the discretion

Commissioners have exercised for decades, requiring them to dismiss matters irrespective of the

facts in any particular proceeding, and even though in some matters, like those cited above, the

agency could hold a later vote to go forward with the matter following further deliberation.  This

would inevitably result in just the sort of "entanglement" in the "management of the agency's

business that the Supreme Court has instructed is inappropriate" for the federal judiciary to

undertake.  *Del Monte,* 706 F. Supp. 2d at 119.

Because plaintiff has failed to challenge a "final" and "discrete" agency action, *Norton,*

542 U.S. at 64, it has failed to state a claim pursuant to the APA, and its "concealment policy"

claims should be dismissed.

## IV.  PLAINTIFF'S MANDAMUS CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT ESTABLISH A CLEAR AND INDISPUTABLE RIGHT TO THAT DRASTIC RELIEF

Plaintiff's Count V seeks "an order compelling Defendants to comply with the law by

notifying 45Committee of the Commission's terminating action in MUR 7486 and releasing its

voting records and any statement of reasons."  (Compl. ¶ 119.)  45Committee seeks a writ

pursuant to 28 U.S.C. § 1361, which grants the district courts jurisdiction over "any action in the

nature of mandamus to compel an officer or employee of the United States or any agency thereof

to perform a duty owed to plaintiff."  Clearly there is no basis for such relief here.

The "remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (citing *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)) (internal quotation marks omitted).  To show entitlement to mandamus, a plaintiff must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists.  *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011).  These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the claim for lack of jurisdiction.  *See Burwell*, 812 F.3d at 189 (citing *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005)).  As with any cause of action, an action for mandamus requires the plaintiff to demonstrate standing as a predicate to the federal court's exercise of its jurisdiction.  *See Nyambal v. Mnuchin*, 245 F. Supp. 3d 217, 222 (D.D.C. 2017).  "Where the relief the plaintiff is seeking is identical under either the APA or the mandamus statute, proceeding under one as opposed to the other is insignificant." *Id.* at 223 n.5 (*quoting Ctr. for Biological Diversity v. Brennan*, 571 F.Supp.2d 1105, 1124 (N.D. Cal. 2007)).

As with its claims pursuant to the APA, plaintiff's request for mandamus relief fails because it has failed to allege claims that are "plausible on [their] face[,]" let alone establish a clear duty to act.  *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plaintiff has pointed to no law requiring the Commission to release MUR proceeding records prior to a successful vote to close the administrative file; this vote is a clear exercise of the Commissioners' discretion, entitled to the deference customarily afforded to agency law enforcement investigations.  *See supra*, Part III.A.  This fatally undermines any suggestion that the Commission is "violating a clear duty to act[.]"  *Monzel*, 641 F.3d at 534.

The party seeking mandamus also "has the burden of showing that its right to issuance of the writ is clear and indisputable." *Burwell*, 812 F.3d at 189 (citing *Power v. Barnhard*, 292 F.3d 781, 784 (D.C. Cir. 2002)) (internal quotation marks omitted).  However, as explained above, plaintiff fails to identify a "policy" the agency has adopted to conceal records as it alleges.  *See supra* Part III.B.  In fact, the agency has often held one reason-to-believe or probable-cause-to-believe vote that does not pass, only to make such a determination in a later vote on the same claim.  *See supra* pp. 20-21.  Moreover, in the roughly four years since the administrative complaint against plaintiff in MUR 7486 was filed, the agency has closed at least 594 MURs.  *See supra* pp. 29-30.  And of course, disagreements between Commissioners about the termination of certain administrative proceedings demonstrate the disputability of the issues plaintiff raises.  *Compare* Statement Regarding Concluded Matters *with* Weintraub Statement.  Therefore, plaintiff cannot demonstrate a "clear and indisputable right to relief[.]"  *Monzel*, 641 F.3d at 534.

Finally, an order that such an individual official provide the broad relief plaintiff seeks would be an unprecedented intrusion into FEC affairs.  The mandamus statute notwithstanding, the Court may not "require the agency to follow a detailed plan of action" and "may not prescribe specific tasks for [the agency] to complete[.]"  *Cobell v. Kempthorne*, 455 F.3d at 307.  Rather, "it must allow [the agency] to exercise its discretion and utilize its expertise in complying with broad statutory mandates."  *Id.* (citing *Cobell v. Norton*, 240 F.3d at 1099, 1106).  The actions at issue here are clearly subject to some dispute, and they implicate significant parts of the agency's administrative enforcement process.  It is for good reason that courts avoid such "entanglement" in the "management of the agency's business" so that such

disputes can be resolved by those with expertise and a stake in the outcome. *Del Monte,* 706 F. Supp. 2d at 119.

Accordingly, plaintiff's Count V should be dismissed.

## V.   PLAINTIFF LACKS STANDING TO PURSUE ITS CLAIMS

Plaintiff falls so short in its effort to challenge the FEC's failure to release certain vote certifications and statements of reasons with respect to MUR 7486 and several other unidentified administrative proceedings, as shown above, that it has not even shown a legally cognizable injury that is redressable by this Court.

### A.   Plaintiff Lacks Standing to Pursue its Broad "Concealment Policy" Allegations on Behalf of Unnamed Third Parties

To establish Article III standing a plaintiff must demonstrate that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-181 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Where a plaintiff asserts a procedural right, he must show that he has suffered a personal and particularized injury that impairs one of his concrete interests. *Int'l Bhd. of Teamsters v. TSA*, 429 F.3d. 1130, 1135 (D.C. Cir. 2005).  "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation — a procedural right in vacuo — is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).  In addition, the federal courts generally prohibit a party from raising the rights or interests of third persons in challenging allegedly illegal governmental action. *See Warth v. Seldin*, 422 U.S. 490, 499-500 (1975); *Rumber v. District of Columbia,* 595 F.3d 1298, 1301 (D.C. Cir. 2010) (per curiam).  This

prohibition is a "judicially self-imposed limit[ ] on the exercise of federal jurisdiction." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

As explained above (*supra* pp. 7-10), plaintiff claims that the alleged harm it has suffered stems from an FEC "concealment policy" to convey a "false impression" that the FEC has not yet taken action on administrative complaints in its enforcement matters and to manipulate the courts into permitting private enforcement of FECA against respondents, a "policy" that plaintiff claims has also affected respondents in unidentified other administrative matters.  (Compl. ¶¶ 2, 3.)  Plaintiff points to no written expression of this supposed FEC "policy" and provides no specific information as to these other proceedings.  *See supra*, Part III.B.  Yet plaintiff seeks "[a]n order setting aside Defendants' new concealment policy" and "[a]n injunction requiring Defendants to issue the required notifications to complainants and respondents and to publicly release Commission's voting records and statements of reasons in *any enforcement matter* after the Commission fails to garner four votes to initiate an enforcement action based on the complaint[.]"  (Compl. at 28-29 (Prayer for Relief) (emphasis added).)

Plaintiff's Complaint does not explain how any alleged "concealment policy," as applied in unidentified administrative proceedings where plaintiff is neither complainant nor respondent, has caused plaintiff any cognizable injury-in-fact that an order of this Court could redress.  Its attempt to pursue this claim violates a basic tenet of American legal jurisprudence, namely that "the decision to seek review must be placed in the hands of those who have a direct stake in the outcome . . . , not . . . in the hands of concerned bystanders," who may "use it simply as a vehicle for the vindication of value interests."  *Am. Legal Found. v. FCC*, 808 F.2d 84, 91 (D.C. Cir. 1987) (internal quotation marks omitted) (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)

(other citation omitted)).  Plaintiff lacks that direct stake as to other enforcement proceedings and therefore fails to establish standing under Article III.

There are limited exceptions to the prudential rule against third-party standing, but 45Committee cannot meet them.  A party seeking third-party standing must demonstrate both a "close" relationship with the person whose interests or rights are at issue and a "hindrance" to that person's ability to protect his or her own interests.  *See, e.g., Kowalski v. Tesmer,* 543 U.S. 125, 129-30 (2004).  45Committee does not qualify for these exceptions.  It has not alleged a "close" relationship with subjects of other FEC enforcement proceedings, nor could it do so, without even naming and describing these individuals or organizations.  Plaintiff also fails to provide any basis to conclude that it has a greater ability to litigate the alleged rights of other FEC enforcement subjects than those subjects themselves.  *See Singleton v. Wulff,* 428 U.S. 106, 114 (1976) (plurality opinion of Blackmun, J.) ("[T]hird parties themselves usually will be the best proponents of their own rights.").  In the absence of any relationship — let alone a "close" one — plaintiff fails to establish third-party standing.

Even if plaintiff's "concealment policy" allegations were construed as applying only to the "seven administrative proceedings" referenced in the Complaint (although no such limitation is apparent in the Prayer for Relief), plaintiff fails to establish that it has any legally cognizable interest at stake in the outcome of those matters.  (Compl. ¶¶ 3, 7.)  In its Complaint plaintiff does not (i) identify these matters, (ii) identify the respondents, or (iii) provide any details as to factual similarities of the matters with each other or with the matter in which plaintiff is a respondent.  Indeed, plaintiff's sole source of knowledge as to these matters appears to be a public statement made by three FEC Commissioners.  (*See* Compl. ¶ 35 (referencing Statement Regarding Concluded Matters).)  This dearth of information regarding these seven proceedings

36

provides no basis to overcome the "judicially self-imposed limits on the exercise of federal jurisdiction." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

This Court has found that parties with a significantly more direct interest in the outcome of an enforcement proceeding nonetheless did not have standing to challenge the Commission's handling of an administrative complaint.  For instance, in *Judicial Watch, Inc. v. Federal Election Commission*, 293 F. Supp. 2d 41, 43 (D.D.C. 2003), a nonprofit legal organization that acted as counsel for an individual contributor to a United States Senate campaign, and the contributor himself, brought an action under FECA's judicial review provision alleging that the Commission had failed to respond to or investigate an administrative complaint the contributor had filed against the campaign committee.  Both plaintiffs alleged that this resulted in informational injury, as they had been deprived of information they sought when the administrative complaint was filed.  *Id.*  The court found that the non-profit, despite serving as counsel to the contributor, was not an administrative complainant and therefore was precluded from seeking judicial review under FECA.  *Id.* at 44-45.  The court also found that the contributor had "not suffered a concrete and particularized injury cognizable by this Court, and therefore lack[ed] standing[.]" *Id*. at 45.  The court rejected the contributor's arguments (1) that he had been deprived of information uncovered during the FEC investigation of his administrative complaint as they pertained to his own contributions; (2) that he might become himself, in the future, a potential respondent in an FEC investigation of the recipient committee and such information would assist in his defense; and (3) that the FEC's delay constituted, in and of itself, an injury in fact.  *Id*. at 45-48.

Here, plaintiff does not allege that it is a complainant or respondent in any of the seven other proceedings to which it refers, and for that reason alone it lacks standing to challenge FEC actions in those proceedings. *Jud. Watch, Inc.*, 293 F. Supp. 2d at 48 (counsel to contributor "is precluded from bringing suit here because it was not a party to the underlying administrative complaint"). In addition, the possibility that plaintiff "may be a potential defendant in a future investigation" is insufficient because plaintiff "has put forth no evidence that an investigation of [its conduct] is ongoing; [it] merely states that one is possible. Future, speculative injury does not satisfy the test for standing as articulated by the Supreme Court in *Lujan*." *Id.* at 47-48. Nor would the Commission's "delay in acting on [plaintiff's] administrative complaint" constitute "an injury in fact," because there is simply "no basis in the law" to find that such a delay is sufficient. *Id.* at 48.

### B. Plaintiff Lacks Standing Even to Pursue Its Claims Regarding MUR 7486

Plaintiff also lacks standing with respect to MUR 7486, the administrative proceeding in which it is a respondent. Plaintiff clearly has a more "direct" stake in whatever action(s) the Commission ultimately decides to take in that MUR, but it does *not* have a cognizable interest in the relief it seeks here, namely "[a]n order compelling Defendants to issue the required notification to 45Committee of the Commission's terminating action in MUR 7486 and publicly release the voting records and any statement of reasons[.]" (Compl. at 29 (Prayer for Relief).)

"Not every unrequited demand for information from the FEC is sufficient to establish Article III standing." *Free Speech for People v. FEC*, 442 F. Supp. 3d 335, 342 (D.D.C. 2020). "[T]he nature of the information allegedly withheld is critical to the standing analysis." *Common Cause v. FEC*, 108 F.3d 413, 417 (D.C. Cir. 1997) (per curiam). "Only if the statute grants a plaintiff a concrete interest in the information sought will he be able to assert an injury in fact." *Nader v. FEC*, 725 F.3d 226, 229 (D.C. Cir. 2013); *see Friends of Animals v. Jewell*, 828 F.3d

989, 992 (D.C. Cir. 2016) (stating that "the existence and scope of an injury for informational

standing purposes is defined by Congress").

Plaintiff's "interest in the information sought" is limited to any "concrete interest"

granted by statute, in this case FECA.  *Nader*, 725 F.3d at 229.  Plaintiff points to only one

provision of FECA that allegedly grants such a concrete interest, which provides that the FEC is

to "make public" a "determination" that "a person has not violated [the] Act[.]"  (Compl. ¶ 26

(citing 52 U.S.C. § 30109(a)(4)(B)(ii)).)  Yet as explained *supra*, Part III.A, neither this

provision nor any other plaintiff cites requires that any disclosure must occur prior to closure of

an enforcement file, nor that an enforcement matter must be considered closed following a single

failed reason-to-believe vote.  Plaintiff's interpretation is also contradicted by years of agency

practice.  *See supra* pp. 20-21.  And courts have rejected similar attempts to read deadlines and

mandates into FECA.  *See Stockman*, 138 F.3d at 152; *Fieger*, 2007 WL 2351006, at *9.

Plaintiff simply has not established a concrete interest in the information it seeks regarding MUR

7486.

Plaintiff's claims of informational injury are similar to but weaker than unsuccessful past

claims about the FEC's handling of enforcement matters brought by the administrative

complainants to those proceedings.  *See, e.g.*, *Free Speech for People*, 442 F. Supp. 3d at 343

(non-profit had no informational interest in obtaining evidence of illegal campaign contributions

by Trump campaign); *Nader*, 725 F.3d at 229 (former presidential candidate did not have

sufficiently concrete interest in information that might show various organizations violated

election laws to keep him off the ballot).

Plaintiff's claims also stand in stark contrast to situations in which courts have found

informational injury.  FEC administrative complainants have been able to establish such standing

in limited situations where they could show their allegations, if successfully pursued, would result in the disclosure of specific information that FECA required to be disclosed by administrative respondents and show that such information would be useful to the complainants in their programmatic activities.  *See*, *e.g.*, *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 783 (D.C. Cir. 2022) (finding that "FECA-required factual information about the amounts of the contested coordinated, in-kind contributions … 'would help [administrative complainants] … to evaluate candidates for public office, … and to evaluate the role that [respondents'] financial assistance might play in a specific election.'") (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)).  Plaintiff is not an administrative complainant, and it has not attempted to make any similar showing.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint should be dismissed in its entirety.

Respectfully submitted,

Lisa Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

*/s/ Christopher H. Bell*
Christopher H. Bell (D.C. Bar No. 1643526)
Attorney
chbell@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
August 22, 2022                    (202) 694-1650

40

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2022, I served the foregoing pursuant to Fed. R. Civ.

P. 5(b)(2)(E) on counsel of record, as a registered ECF user, through the Court's ECF system.

*/s/ Christopher H. Bell*
Christopher H. Bell (D.C. Bar No. 1643526)
Attorney
chbell@fec.gov